# NEW YORK *v.* BELTON

No. 80–328.   Argued April 27, 1981—Decided July 1, 1981

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and BLACKMUN, POWELL, and REHNQUIST, JJ., joined.  REHNQUIST, J.,

filed a concurring statement, *post,* p. 463. STEVENS, J., filed a statement concurring in the judgment, *post,* p. 463. BRENNAN, J., *post,* p. 463, and WHITE, J., *post,* p. 472, filed dissenting opinions, in which MARSHALL, J., joined.

*James R. Harvey* argued the cause for petitioner. With him on the brief was *R. Michael Tantillo.*

*Paul J. Cambria, Jr.,* argued the cause and filed a brief for respondent.

*Deputy Solicitor General Frey* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General McCree, Acting Assistant Attorney General Keeney,* and *Elliott Schulder.**

JUSTICE STEWART delivered the opinion of the Court.

When the occupant of an automobile is subjected to a lawful custodial arrest, does the constitutionally permissible scope of a search incident to his arrest include the passenger compartment of the automobile in which he was riding? That is the question at issue in the present case.

I

On April 9, 1978, Trooper Douglas Nicot, a New York State policeman driving an unmarked car on the New York Thruway, was passed by another automobile traveling at an excessive rate of speed. Nicot gave chase, overtook the speeding vehicle, and ordered its driver to pull it over to the side of the road and stop. There were four men in the car, one of whom was Roger Belton, the respondent in this case. The policeman asked to see the driver's license and automobile registration, and discovered that none of the men owned the vehicle or was related to its owner. Meanwhile, the policeman had smelled burnt marihuana and had seen on

*Richard Emery, Charles S. Sims,* and *Bruce J. Ennis, Jr.,* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging affirmance.

the floor of the car an envelope marked "Supergold" that he associated with marihuana. He therefore directed the men to get out of the car, and placed them under arrest for the unlawful possession of marihuana. He patted down each of the men and "split them up into four separate areas of the Thruway at this time so they would not be in physical touching area of each other." He then picked up the envelope marked "Supergold" and found that it contained marihuana. After giving the arrestees the warnings required by *Miranda* v. *Arizona,* 384 U. S. 436, the state policeman searched each one of them. He then searched the passenger compartment of the car. On the back seat he found a black leather jacket belonging to Belton. He unzipped one of the pockets of the jacket and discovered cocaine. Placing the jacket in his automobile, he drove the four arrestees to a nearby police station.

Belton was subsequently indicted for criminal possession of a controlled substance. In the trial court he moved that the cocaine the trooper had seized from the jacket pocket be suppressed. The court denied the motion. Belton then pleaded guilty to a lesser included offense, but preserved his claim that the cocaine had been seized in violation of the Fourth and Fourteenth Amendments. See *Lefkowitz* v. *Newsome,* 420 U. S. 283. The Appellate Division of the New York Supreme Court upheld the constitutionality of the search and seizure, reasoning that "[o]nce defendant was validly arrested for possession of marihuana, the officer was justified in searching the immediate area for other contraband." 68 App. Div. 2d 198, 201, 416 N. Y. S. 2d 922, 925.

The New York Court of Appeals reversed, holding that "[a] warrantless search of the zippered pockets of an unaccessible jacket may not be upheld as a search incident to a lawful arrest where there is no longer any danger that the arrestee or a confederate might gain access to the article." 50 N. Y. 2d 447, 449, 407 N. E. 2d 420, 421. Two judges dis-

sented. They pointed out that the "search was conducted by a lone peace officer who was in the process of arresting four unknown individuals whom he had stopped in a speeding car owned by none of them and apparently containing an uncertain quantity of a controlled substance. The suspects were standing by the side of the car as the officer gave it a quick ‎check to confirm his suspicions before attempting to transport them to police headquarters . . . ." *Id.*, at 454, 407 N. E. 2d, at 424. We granted certiorari to consider the constitutionally permissible scope of a search in circumstances such as these. 449 U. S. 1109.

## II

It is a first principle of Fourth Amendment jurisprudence that the police may not conduct a search unless they first convince a neutral magistrate that there is probable cause to do so. This Court has recognized, however, that "the exigencies of the situation" may sometimes make exemption from the warrant requirement "imperative." *McDonald* v. *United States,* 335 U. S. 451, 456. Specifically, the Court held in *Chimel* v. *California,* 395 U. S. 752, that a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area. Such searches have long been considered valid because of the need "to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape" and the need to prevent the concealment or destruction of evidence. *Id.*, at 763.

The Court's opinion in *Chimel* emphasized the principle that, as the Court had said in *Terry* v. *Ohio,* 392 U. S. 1, 19, "[t]he scope of [a] search must be 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." Quoted in *Chimel* v. *California, supra,* at 762. Thus while the Court in *Chimel* found "ample justification" for a search of "the area from within which [an arrestee]

might gain possession of a weapon or destructible evidence," the Court found "no comparable justification . . . for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself." 395 U. S., at 763.

Although the principle that limits a search incident to a lawful custodial arrest may be stated clearly enough, courts have discovered the principle difficult to apply in specific cases. Yet, as one commentator has pointed out, the protection of the Fourth and Fourteenth Amendments "can only be realized if the police are acting under a set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement." LaFave, "Case-By-Case Adjudication" versus "Standardized Procedures": The Robinson Dilemma, 1974 S. Ct. Rev. 127, 142. This is because

> "Fourth Amendment doctrine, given force and effect by the exclusionary rule, is primarily intended to regulate the police in their day-to-day activities and thus ought to be expressed in terms that are readily applicable by the police in the context of the law enforcement activities in which they are necessarily engaged. A highly sophisticated set of rules, qualified by all sorts of ifs, ands, and buts and requiring the drawing of subtle nuances and hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges eagerly feed, but they may be 'literally impossible of application by the officer in the field.' " *Id.,* at 141.

In short, "[a] single familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." *Dunaway* v. *New York,* 442 U. S. 200, 213–214.

So it was that, in *United States* v. *Robinson,* 414 U. S. 218, the Court hewed to a straightforward rule, easily applied, and predictably enforced: "[I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Id.,* at 235. In so holding, the Court rejected the suggestion that "there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest." *Ibid.*

But no straightforward rule has emerged from the litigated cases respecting the question involved here—the question of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants. The difficulty courts have had is reflected in the conflicting views of the New York judges who dealt with the problem in the present case, and is confirmed by a look at even a small sample drawn from the narrow class of cases in which courts have decided whether, in the course of a search incident to the lawful custodial arrest of the occupants of an automobile, police may search inside the automobile after the arrestees are no longer in it. On the one hand, decisions in cases such as *United States* v. *Sanders,* 631 F. 2d 1309 (CA8 1980); *United States* v. *Dixon,* 558 F. 2d 919 (CA9 1977); and *United States* v. *Frick,* 490 F. 2d 666 (CA5 1973), have upheld such warrantless searches as incident to lawful arrests. On the other hand, in cases such as *United States* v. *Benson,* 631 F. 2d 1336 (CA8 1980), and *United States* v. *Rigales,* 630 F. 2d 364 (CA5 1980), such searches, in comparable factual circumstances, have been held constitutionally invalid.[1]

When a person cannot know how a court will apply a

---

[1] The state-court cases are in similar disarray. Compare, *e. g., Hinkel* v. *Anchorage,* 618 P. 2d 1069 (Alaska 1980), with *Ulesky* v. *State,* 379 So. 2d 121 (Fla. App. 1979).

settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a policeman know the scope of his authority. While the *Chimel* case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of "the area within the immediate control of the arrestee" when that area arguably includes the interior of an automobile and the arrestee is its recent occupant. Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within "the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m]." *Chimel,* 395 U. S., at 763. In order to establish the workable rule this category of cases requires, we read *Chimel*'s definition of the limits of the area that may be searched in light of that generalization. Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile,[2] he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.[3]

It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach.[4] *United States* v. *Robinson, supra; Draper*

[2] The validity of the custodial arrest of Belton has not been questioned in this case. Cf. *Gustafson* v. *Florida* 414 U. S. 260, 266 (concurring opinion).

[3] Our holding today does no more than determine the meaning of *Chimel*'s principles in this particular and problematic context. It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests.

[4] "Container" here denotes any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as

v. *United States,* 358 U. S. 307. Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have. Thus, while the Court in *Chimel* held that the police could not search all the drawers in an arrestee's house simply because the police had arrested him at home, the Court noted that drawers within an arrestee's reach could be searched because of the danger their contents might pose to the police. 395 U. S., at 763.

It is true, of course, that these containers will sometimes be such that they could hold neither a weapon nor evidence of the criminal conduct for which the suspect was arrested. However, in *United States* v. *Robinson,* the Court rejected the argument that such a container—there a "crumpled up cigarette package"—located during a search of Robinson incident to his arrest could not be searched: "The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." 414 U. S., at 235.

The New York Court of Appeals relied upon *United States* v. *Chadwick,* 433 U. S. 1, and *Arkansas* v. *Sanders,* 442 U. S. 753, in concluding that the search and seizure in the present case were constitutionally invalid.[5] But neither of those

---

luggage, boxes, bags, clothing, and the like. Our holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk.

[5] It seems to have been the theory of the Court of Appeals that the search and seizure in the present case could not have been incident to the

cases involved an arguably valid search incident to a lawful custodial arrest. As the Court pointed out in the *Chadwick* case: "Here the search was conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody; the search therefore cannot be viewed as incidental to the arrest or as justified by any other exigency." 433 U. S., at 15. And in the *Sanders* case, the Court explicitly stated that it did not "consider the constitutionality of searches of luggage incident to the arrest of its possessor. See, *e. g., United States* v. *Robinson,* 414 U. S. 218 (1973). The State has not argued that respondent's suitcase was searched incident to his arrest, and it appears that the bag was not within his 'immediate control' at the time of the search." 442 U. S., at 764, n. 11. (The suitcase in question was in the trunk of the taxicab. See n. 4, *supra.*)

### III

It is not questioned that the respondent was the subject of a lawful custodial arrest on a charge of possessing marihuana. The search of the respondent's jacket followed immediately upon that arrest. The jacket was located inside the passenger compartment of the car in which the respondent had been a passenger just before he was arrested. The jacket was thus within the area which we have concluded was "within the arrestee's immediate control" within the meaning of the *Chimel* case.[6] The search of the jacket, therefore, was a

respondent's arrest, because Trooper Nicot, by the very act of searching the respondent's jacket and seizing the contents of its pocket, had gained "exclusive control" of them. 50 N. Y. 2d 447, 451, 407 N. E. 2d 420, 422. But under this fallacious theory no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee's person, an officer may be said to have reduced that article to his "exclusive control."

[6] Because of this disposition of the case, there is no need here to consider whether the search and seizure were permissible under the so-called

search incident to a lawful custodial arrest, and it did not violate the Fourth and Fourteenth Amendments. Accordingly, the judgment is reversed.

*It is so ordered.*

JUSTICE REHNQUIST, concurring.

Because it is apparent that a majority of the Court is unwilling to overrule *Mapp* v. *Ohio,* 367 U. S. 643 (1961), and because the Court does not find it necessary to consider the "automobile exception" in its disposition of this case, *ante,* at 462–463, n. 6, see *Robbins* v. *California, ante,* p. 437 (REHNQUIST, J., dissenting), I join the opinion of the Court.

JUSTICE STEVENS, concurring in the judgment.

For the reasons stated in my dissenting opinion in *Robbins* v. *California, ante,* p. 444, I agree with JUSTICE BRENNAN, JUSTICE WHITE, JUSTICE MARSHALL, JUSTICE BLACKMUN, and JUSTICE REHNQUIST that these two cases should be decided in the same way, and I also agree with THE CHIEF JUSTICE, JUSTICE STEWART, JUSTICE BLACKMUN, JUSTICE POWELL, and JUSTICE REHNQUIST that this judgment should be reversed.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

In *Chimel* v. *California,* 395 U. S. 752 (1969), this Court carefully analyzed more than 50 years of conflicting precedent governing the permissible scope of warrantless searches incident to custodial arrest. The Court today turns its back on the product of that analysis, formulating an arbitrary "bright-line" rule applicable to "recent" occupants of automobiles that fails to reflect *Chimel's* underlying policy justifications. While the Court claims to leave *Chimel* intact, see *ante,* at 460, n. 3, I fear that its unwarranted abandonment of

"automobile exception." *Chambers* v. *Maroney,* 399 U. S. 42; *Carroll* v. *United States,* 267 U. S. 132.

the principles underlying that decision may signal a wholesale retreat from our carefully developed search-incident-to-arrest analysis. I dissent.

I

It has long been a fundamental principle of Fourth Amendment analysis that exceptions to the warrant requirement are to be narrowly construed. *Arkansas* v. *Sanders,* 442 U. S. 753, 759–760 (1979); *Mincey* v. *Arizona,* 437 U. S. 385, 393–394 (1978); *Coolidge* v. *New Hampshire,* 403 U. S. 443, 454–455 (1971); *Vale* v. *Louisiana,* 399 U. S. 30, 34 (1970); *Katz* v. *United States,* 389 U. S. 347, 357 (1967); *Jones* v. *United States,* 357 U. S. 493, 499 (1958). Predicated on the Fourth Amendment's essential purpose of "shield[ing] the citizen from unwarranted intrusions into his privacy," *Jones* v. *United States, supra,* at 498, this principle carries with it two corollaries. First, for a search to be valid under the Fourth Amendment, it must be " 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Terry* v. *Ohio,* 392 U. S. 1, 19 (1968), quoting *Warden* v. *Hayden,* 387 U. S. 294, 310 (1967) (Fortas, J., concurring). See *Chimel* v. *California, supra,* at 762; *Cupp* v. *Murphy,* 412 U. S. 291, 295 (1973). Second, in determining whether to grant an exception to the warrant requirement, courts should carefully consider the facts and circumstances of each search and seizure, focusing on the reasons supporting the exception rather than on any bright-line rule of general application. See *Sibron* v. *New York,* 392 U. S. 40, 59 (1968); *Preston* v. *United States,* 376 U. S. 364, 367 (1964).[1]

The *Chimel* exception to the warrant requirement was designed with two principal concerns in mind: the safety of the arresting officer and the preservation of easily concealed or destructible evidence. Recognizing that a suspect might have

---

[1] As we noted in *Go-Bart Importing Co.* v. *United States,* 282 U. S. 344, 357 (1931): "There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances."

access to weapons or contraband at the time of arrest, the Court declared:

> "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might·seek to use in order to resist arrest or effect his escape.  Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated.  In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.  And the area into which an arrestee might reach in order to grab a weapon ·or evidentiary items must, of course, be governed by a like rule."  395 U. S., at 762–763.

The *Chimel* standard was narrowly tailored to address these concerns: it permits police officers who have effected a custodial arrest to conduct a warrantless search "of the arrestee's person and the area 'within his immediate control'— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."  *Id.*, at 763.  It thus places a temporal and a spatial limitation on searches incident to arrest, excusing compliance with the warrant requirement only when the search " 'is substantially contemporaneous with the arrest and is confined to the *immediate* vicinity of the arrest.' "  *Shipley* v. *California,* 395 U. S. 818, 819 (1969), quoting *Stoner* v. *California,* 376 U. S. 483, 486 (1964).  See *United States* v. *Chadwick,* 433 U. S. 1, 14–15 (1977); *Dyke* v. *Taylor Implement Mfg. Co.,* 391 U. S. 216, 220 (1968); *Preston* v. *United States, supra,* at 367; *United States* v. *Edwards,* 415 U. S. 800, 810 (1974) (STEWART, J., dissenting).[2]  When the arrest has been

---

[2] " 'Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest.' " *Chambers* v. *Maroney,* 399 U. S. 42, 47 (1970), quoting *Preston* v. *United States,* 376 U. S., at 367.

consummated and the arrestee safely taken into custody, the justifications underlying *Chimel*'s limited exception to the warrant requirement cease to apply: at that point there is no possibility that the arrestee could reach weapons or contraband. See *Chimel* v. *California, supra,* at 764.

In its attempt to formulate a " 'single, familiar standard . . . to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront,' " *ante,* at 458, quoting *Dunaway* v. *New York,* 442 U. S. 200, 213–214 (1979), the Court today disregards these principles, and instead adopts a fiction—that the interior of a car is *always* within the immediate control of an arrestee who has recently been in the car. The Court thus holds:

"[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile . . . [and] may also examine the contents of any containers found within the passenger compartment . . . ." *Ante,* at 460.

In so holding, the Court ignores both precedent and principle and fails to achieve its objective of providing police officers with a more workable standard for determining the permissible scope of searches incident to arrest.

II

As the facts of this case make clear, the Court today substantially expands the permissible scope of searches incident to arrest by permitting police officers to search areas and containers the arrestee could not possibly reach at the time of arrest. These facts demonstrate that at the time Belton and his three companions were placed under custodial arrest—which was *after* they had been removed from the car, patted down, and separated—none of them could have reached the jackets that had been left on the back seat of the car. The

New York Court of Appeals described the sequence of events as follows:

"On April 9, 1978, defendant and three companions were traveling on the New York State Thruway in Ontario County when their car was stopped by a State trooper for speeding. Upon approaching the vehicle, the officer smelled the distinct odor of marihuana emanating from within and observed on the floor an envelope which he recognized as a type that is commonly used to sell the substance. At that point the officer ordered the occupants out of the vehicle, patted each down, removed the envelope from the floor and ascertained that it contained a small amount of marihuana.

"*After the marihuana was found, the individuals, still standing outside the car, were placed under arrest. The officer then re-entered the vehicle, searched the passenger compartment* and seized the marihuana cigarette butts lying in the ashtrays. He also *rifled through the pockets of five jackets on the back seat.* Upon opening the zippered pocket of one of them, he discovered a small amount of cocaine and defendant's identification." 50 N. Y. 2d 447, 449, 407 N. E. 2d 420, 421 (1980) (emphasis added).[3]

Concluding that a "warrantless search of the zippered pockets of an *unaccessible jacket* may not be upheld as a search incident to a lawful arrest where there is *no longer any danger that the arrestee or a confederate might gain access to the article,*" *ibid.* (emphasis added), the court further stated:

"One searches the record in vain for support of the dissenter's claim that at the time of the arrest—the point from which the predicate for the warrantless search is measured—'the jackets were within reach of the four sus-

---

[3] See also 50 N. Y. 2d, at 454, n. 2, 407 N. E. 2d, at 423, n. 2; Tr. of Oral Arg. 4–5; App. A–36.

pects and had not yet been reduced to the exclusive control of the officer.'" *Id.*, at 452, n. 2, 407 N. E. 2d, at 423, n. 2, quoting *id.*, at 454, 407 N. E. 2d, at 424 (dissenting opinion).

By approving the constitutionality of the warrantless search in this case, the Court carves out a dangerous precedent that is not justified by the concerns underlying *Chimel.* Disregarding the principle "that the scope of a warrantless search must be commensurate with the rationale that excepts the search from the warrant requirement," *Cupp* v. *Murphy,* 412 U. S., at 295, the Court for the first time grants police officers authority to conduct a warrantless "area" search under circumstances where there is no chance that the arrestee "might gain possession of a weapon or destructible evidence." *Chimel* v. *California,* 395 U. S., at 763. Under the approach taken today, the result would presumably be the same even if Officer Nicot had handcuffed Belton and his companions in the patrol car before placing them under arrest, and even if his search had extended to locked luggage or other inaccessible containers located in the back seat of the car.

This expansion of the *Chimel* exception is both analytically unsound and inconsistent with every significant search-incident-to-arrest case we have decided in which the issue was whether the police could lawfully conduct a warrantless search of the area surrounding the arrestee. See, *e. g., United States* v. *Chadwick,* 433 U. S., at 15 (search of footlocker "conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody" not incident to arrest); *Coolidge* v. *New Hampshire,* 403 U. S., at 456–457, and n. 11 (search of car in driveway not incident to arrest in house); *Chambers* v. *Maroney,* 399 U. S. 42, 47 (1970) (warrantless search of car invalid once arrestee has been placed in police custody); *Vale* v. *Louisiana,* 399 U. S., at 35 (area of immediate control does not extend to inside of house when suspect is arrested on front step); *Dyke* v. *Taylor Implement Mfg. Co.,* 391 U. S., at 220

(search of car after occupant placed in custody and taken to courthouse not valid as incident to arrest) ; *Preston* v. *United States,* 376 U. S., at 368 (search of car not valid as incident to arrest: although suspects were in car when arrested, they were in custody at police station when car was searched). These cases demonstrate that the crucial question under *Chimel* is not whether the arrestee could *ever* have reached the area that was searched, but whether he could have reached it at the time of arrest and search. If not, the officer's failure to obtain a warrant may not be excused.[4] By disregarding this settled doctrine, the Court does a great disservice not only to *stare decisis,* but to the policies underlying the Fourth Amendment as well.

## III

The Court seeks to justify its departure from the principles underlying *Chimel* by proclaiming the need for a new "bright-line" rule to guide the officer in the field. As we pointed out in *Mincey* v. *Arizona,* 437 U. S., at 393, however, "the mere fact that law enforcement may be made more efficient can never by itself justify disregard of the Fourth Amendment." Moreover, the Court's attempt to forge a "bright-line" rule fails on its own terms. While the "interior/trunk" distinction may provide a workable guide in certain routine cases— for example, where the officer arrests the driver of a car and then immediately searches the seats and floor—in the long run, I suspect it will create far more problems than it solves. The Court's new approach leaves open too many questions and, more important, it provides the police and the courts with too few tools with which to find the answers.

Thus, although the Court concludes that a warrantless search of a car may take place even though the suspect was

---

[4] " 'We cannot be true to [the Fourth Amendment] and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation make that course imperative.' " *Chimel* v. *California,* 395 U. S., at 761, quoting *McDonald* v. *United States,* 335 U. S. 451, 456 (1948).

arrested outside the car, it does not indicate how long after the suspect's arrest that search may validly be conducted. Would a warrantless search incident to arrest be valid if conducted five minutes after the suspect left his car? Thirty minutes? Three hours? Does it matter whether the suspect is standing in close proximity to the car when the search is conducted? Does it matter whether the police formed probable cause to arrest before or after the suspect left his car? And *why* is the rule announced today necessarily limited to searches of cars? What if a suspect is seen walking out of a house where the police, peering in from outside, had formed probable cause to believe a crime was being committed? Could the police then arrest that suspect and enter the house to conduct a search incident to arrest? Even assuming today's rule is limited to searches of the "interior" of cars—an assumption not demanded by logic—what is meant by "interior"? Does it include locked glove compartments, the interior of door panels, or the area under the floorboards? Are special rules necessary for station wagons and hatchbacks, where the luggage compartment may be reached through the interior, or taxicabs, where a glass panel might separate the driver's compartment from the rest of the car? Are the only containers that may be searched those that are large enough to be "capable of holding another object"? Or does the new rule apply to any container, even if it "could hold neither a weapon nor evidence of the criminal conduct for which the suspect was arrested"? Compare *ante,* at 460–461, n. 4, with *ante,* at 461.

The Court does not give the police any "bright-line" answers to these questions. More important, because the Court's new rule abandons the justifications underlying *Chimel, it offers no guidance to the police officer seeking to work out these answers for himself.* As we warned in *Chimel:* "No consideration relevant to the Fourth Amendment suggests any point of rational limitation, once the search is allowed to go beyond the area from which the person arrested

might obtain weapons or evidentiary items." 395 U. S., at 766. See also *Mincey* v. *Arizona, supra,* at 393. By failing to heed this warning, the Court has undermined rather than furthered the goal of consistent law enforcement: it has failed to offer any principles to guide the police and the courts in their application of the new rule to nonroutine situations.

The standard announced in *Chimel* is not nearly as difficult to apply as the Court suggests. To the contrary, I continue to believe that *Chimel* provides a sound, workable rule for determining the constitutionality of a warrantless search incident to arrest. Under *Chimel,* searches incident to arrest may be conducted without a warrant only if limited to the person of the arrestee, see *United States* v. *Robinson,* 414 U. S. 218 (1973), or to the area within the arrestee's "immediate control." While it may be difficult in some cases to measure the exact scope of the arrestee's immediate control, relevant factors would surely include the relative number of police officers and arrestees, the manner of restraint placed on the arrestee, and the ability of the arrestee to gain access to a particular area or container.[5] Certainly there will be some close cases, but when in doubt the police can always turn to the rationale underlying *Chimel*—the need to prevent the arrestee from reaching weapons or contraband—before

---

[5] The Court sets up a strawman when it claims that under the "exclusive control" approach taken by the Court of Appeals, "no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee's person, an officer may be said to have reduced that article to his 'exclusive control.'" *Ante,* at 461–462, n. 5. If a police officer could obtain exclusive control of an article by simply holding it in his hand, I would certainly agree with the Court. But as we recognized in *United States* v. *Chadwick,* 433 U. S. 1, 14–15 (1977), exclusive control means more than that. It means sufficient control such that there is no significant risk that the arrestee or his confederates "might gain possession of a weapon or destructible evidence." *Chimel* v. *California,* 395 U. S., at 763. The issue of exclusive control presents a question of fact to be decided under the circumstances of each case, just as the New York Court of Appeals has decided it here.

exercising their judgment. A rule based on that rationale should provide more guidance than the rule announced by the Court today. Moreover, unlike the Court's rule, it would be faithful to the Fourth Amendment.

JUSTICE WHITE, with whom JUSTICE MARSHALL joins, dissenting.

In *Robbins* v. *California, ante,* p. 420, it was held that a wrapped container in the trunk of a car could not be searched without a warrant even though the trunk itself could be searched without a warrant because there was probable cause to search the car and even though there was probable cause to search the container as well. This was because of the separate interest in privacy with respect to the container. The Court now holds that as incident to the arrest of the driver or any other person in an automobile, the interior of the car and any container found therein, whether locked or not, may be not only seized but also searched even absent probable cause to believe that contraband or evidence of crime will be found. As to luggage, briefcases, or other containers, this seems to me an extreme extension of *Chimel* and one to which I cannot subscribe. Even if the decision in *Robbins* had been otherwise and *United States* v. *Chadwick,* 433 U. S. 1 (1977), and *Arkansas* v. *Sanders,* 442 U. S. 753 (1979), had been overruled, luggage found in the trunk of a car could not be searched without probable cause to believe it contained contraband or evidence. Here, searches of luggage, briefcases, and other containers in the interior of an auto are authorized in the absence of any suspicion whatsoever that they contain anything in which the police have a legitimate interest. This calls for more caution than the Court today exhibits, and, with respect, I dissent.