STATE of Tennessee, Appellee,

v.

John C. HALL, Jr., Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Oct. 30, 1981.

 

C. Dwaine Evans, Morristown, for appellant.

William M. Leech, Jr., Atty. Gen., Kymberly Lynn Anne Hattaway, Asst. Atty. Gen., Nashville, Heiskell Winstead, Dist. Atty. Gen., Rogersville, Edward H. Moody, Asst. Dist. Atty. Gen., Morristown, for appellee.

## OPINION

DUNCAN, Judge.

The defendant, John C. Hall, Jr., was convicted of third degree burglary and received a penitentiary sentence of not less than three (3) years nor more than six (6) years.

In this appeal the defendant contests the sufficiency of the evidence, contends the trial court erred in denying his motion to suppress certain evidence, and insists that a portion of the district attorney general's closing argument was improper. We find no merit to these complaints.

The State's evidence showed that during the night of July 7, 1980, or in the early morning hours of July 8, the Surgoinsville Drug Center was burglarized, and narcotics worth over three hundred dollars ($300.00), were stolen. Entry had been made through a front door. The evidence indicated that an automobile had been backed against the door, resulting in a plate glass door being shattered.

Further, after business hours on the night in question, a police officer observed a white 1973 or 1974 Pinto station wagon about five hundred (500) feet from the Drug Center. The vehicle was unoccupied and parked. The officer copied down the license number. Around 2:00 a.m., the officer again observed this vehicle travelling on the highway at a slow rate of speed, followed the car, and saw the driver turn off "at the Johnson Estates."

On July 14, 1980, the defendant was sitting in his vehicle which was parked in a restaurant parking lot. An officer observed the defendant injecting himself with drugs and arrested him. The defendant appeared to be under the influence of drugs. In the defendant's vehicle, the police found the narcotics which had been stolen from the Surgoinsville Drug Center.

Other evidence established that the Pinto station wagon, which had been seen in the vicinity of the Drug Center on the night in question, was registered in the name of the defendant's wife, who lived in "Johnson Estates." After his arrest, the defendant was hospitalized because of his drugged condition. While there he was questioned by the police, and admitted that he drove the 1974 Pinto on the night of the burglary, and stated that he slept in the car on that night in the graveyard across from the Surgoinsville Police Station. He told the police that the drugs in his vehicle at the time of his arrest had been purchased by him and Scott Arnold from a man named Richard Umbarger.

Scott Arnold testified for the State and denied the defendant's attempt to implicate him in this crime. He said he had not participated with the defendant in the purchase of the drugs. Arnold had no knowledge of anyone by the name of Richard Umbarger. Further, Arnold testified that two (2) days prior to the defendant's arrest,

he observed a bag of drugs in the defendant's possession.

An expert from the F.B.I. testified as a witness for the State that glass found lodged on the bumper of the 1974 Pinto station wagon matched pieces of glass from the broken door of the burglarized premises.

The defendant testified at trial that he had purchased the drugs from Richard Umbarger in the parking lot shortly before his arrest. He recalled talking to the police at the hospital but could not remember the specifics of what he told them. He was unable to account for the drugs which Arnold saw in his possession.

Also, the defendant attempted to establish an alibi for the night of the burglary and offered his father's and sister's testimony in support of his testimony that he was elsewhere on this night. In view of the strong evidence of the defendant's guilt, the jury quite properly rejected his alibi defense.

We find the evidence to be more than ample to warrant the jury in finding the defendant guilty beyond a reasonable doubt. *T.R.A.P.* 13(e); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ Next, we find no merit to the defendant's complaint about an alleged illegal search and seizure in this case.

On the morning of the trial, the trial court held a jury-out hearing on the defendant's motion to suppress the drugs found in his vehicle. At the suppression hearing, Officer Dan Brookshire testified that he received a complaint about a man using drugs in a restaurant parking lot, and upon his arrival at that location, the officer observed the defendant in a parked automobile. The defendant had a "belt wrapped around his arm and a syringe in his arm." Officer Brookshire arrested the defendant, who appeared to be intoxicated by drugs.

Further, the evidence established that as the defendant was being placed in the police cruiser, Officer Paul Jennings arrived on the scene. Officer Jennings looked into the automobile and saw a bag of marihuana in the ashtray and a brown paper bag in the seat. The officers searched the brown paper bag and found that it contained the contraband drugs.

Obviously, when the officer observed the defendant taking drugs, he had probable cause to arrest him, and as an incident to this legal arrest, the police had a right to search the car and to seize the drugs contained in the brown paper bag. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

In *New York v. Belton, supra,* the United States Supreme Court was confronted with a factual situation where the police had made a lawful arrest of Belton, and thereupon searched his car. A jacket belonging to Belton was discovered on the back seat of the car, and after unzipping one of the pockets, the police discovered cocaine. In ruling the search and seizure to be valid, the Court said:

> Accordingly, we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.
>
> It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. [Citations omitted]. Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have. 101 S.Ct. at 2864.

Further, the fact that the present defendant had been removed from his vehicle at the time of the search does not affect the validity of the search. In *Belton*, the occupants of the automobile had also been removed from their vehicle prior to the search

and yet the United States Supreme Court upheld the search as incident to a lawful custodial arrest. As we view the present record, the facts here are almost identical with the facts in *Belton.*

We hold the trial court correctly overruled the defendant's motion to suppress. The evidence was properly admitted.

In his final complaint, the defendant says the district attorney general made an improper comment in his closing argument. Regarding this portion of the district attorney general's argument, the record shows as follows:

PROSECUTOR: [D]o you believe that Mr. Hall's vehicle was the vehicle that was used to break that door? And you heard the FBI expert testify and he told you, *all* of the circumstances that in his professional opinion after 9½ years of working with the FBI that that glass came, that was found under that bumper by Chief Taylor and by Harry Burton and as I recall Chief Taylor's testimony was that he was holding up the rubber on the bumper and Harry was picking it out with a pen, a ball point pen and they put it in an envelope and they sent it in there. Now, that glass was exactly like the glass that was taken from that door. It was not like the glass that was in the tire. But it was exactly like the glass that was in the bumper and the door that was there. So, is there any question, is there any doubt in your mind that Mr. Hall's vehicle was used to break in that door? If there is, then you can turn him loose. Now, the defense had a copy of that report. They've had an opportunity to examine this evidence, they've had an opportunity to have all the analysis in the world. There isn't any other expert testimony here except the uncontradicted expert testimony...

DEFENSE ATTORNEY: Your Honor, I object to that. We don't have a chance to analysis. Mr. Hall's indigent.

PROSECUTOR: Certainly could ask for it, your Honor, please. There was never a request made.

THE COURT: It's argument, gentlemen.

A trial judge has wide discretion in the control of counsel's argument, and his exercise of such discretion will not be interfered with in the absence of plain abuse. *Smith v. State,* 527 S.W.2d 737 (Tenn.1975).

Although under *Graham v. State,* 547 S.W.2d 531 (Tenn.1977), an indigent criminal defendant has no right to the services of a private expert at State expense, the holding in that case neither bars the defendant from requesting such relief from the trial court, nor precludes the trial court from granting such relief. Thus, it follows that since the defendant had an opportunity to request the services of a private expert, yet chose not to exercise that opportunity, then the district attorney general's argument was reasonably predicated upon the circumstances of the case and was accordingly proper. Nevertheless, the possibility that the trial court would have granted the defendant's request for an expert witness at State expense is fairly remote, and obviously, it would have been better for the district attorney general not to have commented on the defendant's failure to have had an analysis made. At any rate, the evidence in this case, apart from the F.B.I. expert's testimony, is more than ample to show the defendant's guilt, and in our opinion, this isolated remark by the district attorney general did not affect the verdict of the jury. *See State v. Sutton,* 562 S.W.2d 820 (Tenn.1978).

We find no reversible error in this record, and the judgment of the trial court is affirmed.

DAUGHTREY and SCOTT, JJ., concur.