**Debra K. VOELKEL, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–81–227–CR.**

Court of Appeals of Texas, Fort Worth.

Feb. 24, 1982.

Rehearing Denied March 24, 1982.

Law Offices of Gilbert D. Smith, Carl E. Mallory and Carl E. Mallory, Arlington, for appellant.

Tim Curry, Dist. Atty. and C. Chris Marshall, Asst. Dist. Atty., Fort Worth, for appellee.

Before HUGHES, JORDAN and RICHARD L. BROWN, JJ.

## OPINION

HUGHES, Justice.

Debra K. Voelkel has appealed the order revoking her probation. She pled guilty to possession of methamphetamine and was assessed a punishment of three years confinement in the Texas Department of Corrections and a $200.00 fine. The prison sentence was probated. The appellant was found by the court to have again been in possession of a controlled substance, amphetamine, and for this reason her probation was revoked.

We affirm.

Ms. Voelkel checked into a motel on April 16, 1981. She vacated the room on April 20th. The normal check-out time of the motel each day was 1:00 p. m. On the 17th, 18th and 19th days of April the appellant

had paid her rental after 1:00 p. m. without protest by the motel staff.

On April 20th the motel manager called the police to the motel. Two officers went to the motel at around 3:00 p. m. of the day. The officers were told that the appellant had three times been informed that the room was no longer available and that no signs of her vacating were visible. The manager stated that he was going to go to the room himself but, under the circumstances, he wanted an officer with him.

The threesome went to Ms. Voelkel's door where the manager knocked and identified himself. The police officers were standing behind the manager. Ms. Voelkel opened the door approximately three-quarters wide. One of the officers testified at trial that, at this point, there was no reason to believe that there was any criminal activity.

Ms. Voelkel was then told that she would have to leave. Offering no resistance to this admonition she stepped to the right of the doorway. At this point the manager took one step into the room. One of the officers stepped in behind the manager. The officer testified that he took this step inside for the safety of the manager. As the officer stepped into the room Ms. Voelkel reached toward a dresser which was thirty-six inches from the door. From his vantage point inside the door the officer could see that on the dresser was a large set of scales which had a drawer which was open and in which the officer could see some syringes. The officer could also see a pharmaceutical bottle sitting on the dresser.

At this point the officer told the appellant to freeze. This officer frisked her while his partner frisked her male companion. The partner had Ms. Voelkel's companion against the wall and had removed a .38 caliber pistol from his boot. A bag of marihuana was also pulled from the companion's boot. Ms. Voelkel and her companion were then handcuffed and advised of their constitutional rights.

The officers then conducted a general search. In the course of this search a plastic clothing bag which was lying on the bed was searched. Inside this plastic clothing bag was found a cigarette case, the contents of which were examined on the scene. Due to the fact that it had questionable material in it the officer preserved the material for analysis by the crime lab.

At the heart of the appellant's first ground of error is the contention that the warrantless search of her room was tainted by the illegality of the initial entry into the room.

■ A motel room is the equivalent of a home in the context of the constitutional protections from unreasonable searches and seizures. *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). In *Stoner* it was held that a hotel clerk could not validly consent to the search of an occupant's room. The facts of this case are distinguishable from those in *Stoner*, however, because consent by the manager is not at issue here.

■ The police officers were at the scene upon the request of the manager who had expressed a concern over his safety. Up to the point that the appellant reached toward the dresser and scales the officers were merely acting as guardians of the manager's safety. As stated above, one of the officers testified that up to the point that the appellant made her reach there was no reason to believe that there was any criminal activity. His step in behind the manager was for the safety of the manager, not a subterfuge or ruse to an uninvited view of the room. The entry was of such a limited nature that it was reasonable in view of the manager's expression of concern for his own safety. At this point the officers were performing their responsibility of maintaining the peace. They were not conducting a search.

■ It was when Ms. Voelkel reached toward the dresser that the officer became concerned over his own safety as well as the safety of the manager. The persons of the appellant and her companion were then frisked. Such a search is constitutionally permissible for the discovery of weapons which might be used to harm an officer or

others nearby. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ The second ground of error is that the search of the room was without warrant or probable cause. There is no question that when the gun and the marihuana were found on the person of the appellant's companion the appellant and her companion were under arrest. The search conducted thereafter was conducted as an incident to these arrests. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

The third ground of error attacks the warrantless search of the appellant's clothing bag. The search of this clothing bag (wherein the controlled substance was found within a cigarette case) was conducted as Ms. Voelkel and her companion sat handcuffed on different sides of the room. At the time the search was conducted her hands were cuffed in front of her. The clothing bag was on the bed.

■ Under *Chimel* the police have the right to search the area within the immediate control of the arrestee. The question becomes one of whether the police officers could reasonably have expected that appellant could have gained possession of a weapon or destructible evidence from inside the clothing bag and cigarette case. In *United States v. Jones*, 475 F.2d 723 (5th Circ. 1973) the court looked to the fact that the arrestee's hands were cuffed in front of him in stating that the police could have reasonably expected the arrestee to gain access to a weapon or any destructible evidence which could have been in a suitcase. Furthermore, it appears that under the holding of *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) the contents of any container (any object capable of holding another object) within the reach of the arrestee are subject to search as an incident to an arrest. (The holding in *Belton* could be interpreted as an application of the test as to whether the officers could have reasonably expected the arrestee to gain access to a weapon or destructible evidence in the area searched.)

It is not unreasonable to expect that Ms. Voelkel, although frontally handcuffed, could have obtained a weapon or destroyed evidence in the clothing bag and cigarette case. See also: *United States v. Ciotti*, 469 F.2d 1204 (3d Cir. 1972 vacated on other grounds 414 U.S. 1151, 94 S.Ct. 907, 39 L.Ed.2d 105).

In summary, we uphold the search of the room and the seizure of the amphetamine. We overrule the first three grounds of error.

The fourth ground of error is that her conviction is invalid because Ms. Voelkel was denied a trial before a neutral and impartial judge.

■ While it is true that the trial court made certain inquiries during the course of the revocation hearing, he did so without any objection on the part of the appellant. Furthermore, it is readily apparent that the inquiries made were for the purpose of clarification. We find nothing to indicate that the trial judge maintained other than an impartial attitude. This being the case the trial judge's inquiries were permissible, especially in view of there being no objection made. *Brewer v. State*, 572 S.W.2d 719 (Tex.Cr.App.1978); *Munoz v. State*, 485 S.W.2d 782 (Tex.Cr.App.1972). We overrule the fourth ground of error.

The fifth ground of error is that there was no evidence that Ms. Voelkel ever possessed amphetamines because no evidence was ever offered before the court that could be considered evidence of that wrongful act.

During the course of the hearing the State had the cigarette case found in the clothing bag marked as State's Exhibit Number Two. Although the cigarette case was never offered or admitted into evidence, there were several instances where the cigarette case was referred to and discussed. This includes reference to and discussion by Ms. Voelkel. It was made clear that State's Exhibit Number Two was the cigarette case.

A chemist testified for the State, without objection, that he had examined the con-

tents of State's Exhibit Number Two and that the contents thereof contained amphetamine.

It is apparent that the cigarette case and the amphetamine were treated as if they had been admitted into evidence. In fact, the statement of facts provides a notation that the cigarette case was not attached to the transcript, but was retained by the trial court. This treatment of the cigarette case as if it were evidence coupled with the chemist's testimony as to the identification of the contents thereof renders the appellant's fifth ground of error tenuous at best. *Huff v. State*, 576 S.W.2d 645 (Tex.Cr.App.1979); *Ex parte Reagan*, 549 S.W.2d 204 (Tex.Cr.App.1977); *Killion v. State*, 503 S.W.2d 765 (Tex.Cr.App.1973); *Hardon v. State*, 417 S.W.2d 170 (Tex.Cr. App.1967). We overrule the fifth ground of error.

The order of the trial court revoking the probation is affirmed.