John Mackenzie, U.S. Atty., Rockford, Ill., for plaintiff.

John Nelson, Rockford, Ill., for defendants.

**UNITED STATES of America, Plaintiff,**

v.

**Franklin Richard FREEMAN, Ralphfield Hudson and James Harris, Defendants.**

**No. 88 CR 20022.**

United States District Court, N.D. Illinois, W.D.

June 5, 1989.

### ORDER

ROSZKOWSKI, District Judge.

This action comes before the court on the defendants Franklin Freeman, a/k/a Frankie Freeman ("Freeman") and Ralphfield Hudson's ("Hudson") motion to suppress certain items of physical evidence. For the reasons set forth below, the court denies their motion to suppress.

### BACKGROUND

The suppression issue before the court emanates from the government charging

the defendants with violations of 18 U.S.C. §§ 922(g), 924(c) and (e), 21 U.S.C. §§ 841(a)(1), 844, 846 and 26 U.S.C. §§ 5861 and 5871. These charges arise out of incidents occurring on the night of January 24, 1988 on the 900 block of Bruce Street, Rockford, Illinois. At or around 11:00 p.m. on that night, police officers of the City of Rockford, acting without a warrant, arrested the defendants. In addition, the police officers conducted a search of the defendants' persons and of the 1981 brown Cadillac in which Hudson and Freeman were recently sitting. As a result of these searches certain items were discovered and tagged into evidence; evidence which now bears the following tag numbers: 15631, 15621, 15627, 15628, 15554, 15555, 15553, 15556, 15552, 15559, 15621, 15626, 15619 and 15617. Presently, the defendants Freeman and Hudson move to suppress the preceeding items of evidence from introduction at trial, since the seizure of said evidence was allegedly accomplished in violation of the Fourth Amendment to the United States Constitution, Article I, section 6 of the Constitution of the State of Illinois,[1] and Ill.Rev.Stat. ch. 38, ¶¶ 107–14, 108–1, and 108–1.01. The court held a suppression hearing on December 6, 1988 at 11:00 a.m.

## DISCUSSION

The defendants request the court to rule on the constitutional propriety of the relevant Rockford police officers' actions when they seized the defendants' persons and searched the defendants 1981 brown Cadillac. Not surprisingly, the parties are at odds as to the events of January 24, 1988 and the legal conclusions to be drawn from those events. Indeed, both parties approach the actions of the police on January 24, 1988 under different legal theories.

The defendants operate under a *Terry* stop and frisk approach. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The defendants argue that Rockford police officer Chester Epperson

("Epperson") did not have an articulable factual basis that criminal activity was afoot; therefore, Officer Epperson did not have the constitutionally requisite basis to stop the defendants. *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880. Moreover, the defendants continue, that Officer Epperson certainly did not have any reason to believe that the defendants were "armed and dangerous;" therefore, Officer Epperson had no cause to "frisk" or "pat down" the defendants as he and other officers did. *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883. Instead, the defendants conclude that Officer Epperson acted on mere suspicion and thus outside the confines of the Fourth Amendment.

The government counters that indeed if one considers the "totality of circumstances" facing Officer Epperson and examines all of the relevant factors, it is plain to see that Officer Epperson had an articulable factual basis that criminal activity was afoot and thus acted properly and within the constraints of the Constitution and Ill. Rev.Stat. ch. 38, ¶¶ 107–14, 108–1.01. *See United States v. Cortez,* 449 U.S. 411, 418–19, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). More importantly, the government adds that regardless of whether Officer Epperson acted impermissibly under a *Terry* analysis, Officer Epperson did not invoke Fourth Amendment activity until after he spotted open liquor containers in the defendants' Cadillac and at that point, he had "probable cause" to arrest the defendants for the offense of transportation of open liquor containers. *See United States v. Watson,* 423 U.S. 411, 418, 96 S.Ct. 820, 825, 46 L.Ed.2d 598 (1976). The government continues that the subsequent searches of the defendants' persons and vehicles were searches incident to arrest and thus permissible under the Fourth Amendment. *See New York v. Belton,* 453 U.S. 454, 461, 101 S.Ct. 2860, 2864–65, 69 L.Ed.2d 768 (1981).

The court acknowledges that a probable cause/search incident to arrest analysis would render a *Terry* analysis irrelevant if

---

1. While the defendants cite the Illinois Constitution as support for their motion to suppress, they fail to pursue this allegation in any respect in their briefs and as such the Court will assume this contention is abandoned.

one, no seizure of the defendants occurred before the defendants' arrest and, two, the officer, indeed, had probable cause to arrest the defendants. If one of the two requirements are not present, then it may be necessary to embark upon a *Terry* analysis of the events of January 24, 1988.

■ First, the court agrees with the government's characterization that no seizure of the defendants occurred until Officer Epperson demanded that the defendants place their hands on the trunk of their car. Prior to this juncture, at no time were the defendants seized as such, so no Fourth Amendment activity was invoked. The mere presence of a police officer or his intent to investigate or actual investigation of an area does not necessarily qualify as a seizure or search for Fourth Amendment purposes. *See Terry,* 392 U.S. at 19 n. 16, 88 S.Ct. at 1879 n. 16; *U.S. v. Borys,* 766 F.2d 304, 309 (7th Cir.1985), *cert. denied,* 474 U.S. 1082, 106 S.Ct. 852, 88 L.Ed.2d 893. Accordingly, the fact that Officer Epperson decided to investigate the defendants on the night of January 24, 1988, does not impugn Freeman and/or Hudson's constitutional rights, even if the officer was driven by a mere hunch or suspicion at that point. Thus, the relevant time for our Fourth Amendment inquiry is at the point of seizure which the court finds to be when Officer Epperson demanded the defendants to place their hands on the trunk of their car.

■ The next inquiry, then, is whether Officer Epperson had "probable cause" that a crime had occurred, not merely an articulable factual basis that criminal activity was afoot when he seized the defendants.

The answer to this inquiry is most difficult and requires a close examination of the events of January 24, 1988. In this branch of the inquiry, the court begins with the premise that if indeed Officer Epperson did see two of the three liquor bottles open, he had "probable cause" to seize the defendants for a liquor violation. *See Watson,* 423 U.S. at 418, 96 S.Ct. at 825; *see also Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In

determining whether Officer Epperson had probable cause, the court must be wary of the use of the defendant's liquor violation as a mere "pretext" to act on the officer's suspicions of more serious drug offenses. *See* 2 W. LaFave, Treatise on Search & Seizure § 5.2(e) (1978). That is, the initial traffic offense was manufactured to allow the police officer to act on his suspicion. Indeed, the instant case presents fairly classic circumstances where a pretextual traffic violation could occur.

In particular, on the night of January 24, 1988 Officer Epperson was aware of a "drug house" being in relatively close proximity to the defendants' brown Cadillac. (Tr. 11). Epperson was also apprised by his passenger that night that drug activity occurred in the area of Woodlawn and Bruce Streets. (Tr. 41). Furthermore, Epperson recognized the defendant, Frankie Freeman, in the Cadillac as a former felon. (Tr. 14, 23, 48–49). Officer Epperson was familiar with this area and knew it to be one suffering a relatively high incidence of crime. (Tr. 10, 23). Epperson had also seen a pedestrian, traveling toward the parked car, turn around when ostensibly the pedestrian spotted Epperson's unmarked police cruiser. (Tr. 12, 19). Finally, Epperson admits that based on these factors, among others, he decided to investigate the brown Cadillac and he radioed his intentions to the police switchboard, prior to seeing any open liquor bottles. (Tr. 17, 46, 49). Undoubtedly, Officer Epperson must have contemplated drug-related activity when he decided to investigate.

Given the circumstances and Epperson's frame of mind, the court must look with a jaundiced eye at the remarkable fortuity that Officer Epperson witnessed a traffic violation and was thus allowed to satisfy his curiosity as to the activity within the 1981 brown Cadillac. At the same time, the mere fact that Officer Epperson may have anticipated one crime (i.e. drug activity) while discovering another should not be looked upon as an impossible occurrence.

In the end, the court, as the fact finder, must decide if Officer Epperson's discovery of the open liquor bottles was a pretext or

merely a coincidence. After reviewing the circumstances surrounding the defendants' arrest, and the testimony of Officer Epperson at the suppression hearing, the court, with all its suspicions, finds that Officer Epperson did indeed spot the open liquor as he testified.

First of all, the defendants make much of the difficulty of Officer Epperson seeing the bottles as he swept past the defendants' car on the night of January 24, 1988. The defendants suggest that Ralphfield Hudson's body and the Cadillac's door would prevent a viewer in Epperson's position from seeing the bottles, particularly with the bottles being on the floorboard hump between the driver and passenger side of the Cadillac. In some respects the defendants have a point. The bottles were not blinking beacons. Officer Epperson, however, a highly trained police officer on a DUI beat on January 24, 1988, slowly swept past the brown Cadillac and illuminated the inside of the car with his floodlight with the express purpose of investigating the car's contents. Officer Epperson was not a casual observer. Furthermore, after studying government suppression exhibit nos. 2 and 5, the court finds that bottles could have been readily viewed from a distance approximate to the distance between Epperson and the Cadillac on the relevant night. The court also acknowledges the happenstance of Hudson opening the door and exiting the car as Epperson passed. But Hudson's actions are not beyond the realm of possibility, particularly if Hudson was aware of an impending confrontation with police.

One further factor favoring Epperson's testimony is that the impetus to "manufacture" an initial liquor offense decreased proportionately as Epperson's confidence in his right to stop the defendants for suspicion of drug activity increased. Based on Epperson's testimony, the court finds that Epperson, indeed, believed he had a solid factual basis to anticipate that illicit drug activity was occurring, and therefore could rightfully stop the defendants without the presence of an initial traffic offense.

Finally, the court is aware that the events of January 24, 1988 as expounded by Officer Epperson are not necessarily the most probable course of events; this realization, however, does not mean the events did not occur as Epperson describes. Indeed, the court explicity and expressly finds and credits Epperson's testimony as to the events of the night of January 24, 1988. That is, after studying his demeanor, the court finds Officer Epperson and his testimony highly credible and this fact above all others influences this court's decision to find that Epperson saw two open liquor bottles as he passed the defendants' car and that this traffic violation was not a mere pretext to act out his suspicion of narcotic activity. Had Officer Epperson's testimony left any doubt as to its credibility, a different result would have most likely occurred.

Accordingly, the court finds that Officer Epperson, after viewing the open liquor, had probable cause to arrest the defendants without a warrant, and that the search of their persons and of the brown Cadillac was incident to said arrest. *See Belton*, 453 U.S. at 460–62, 101 S.Ct. at 2864–65. Therefore the court denies the defendants' motion to suppress the items listed on page 2 of this memorandum. Given this ruling, the court finds that it is unnecessary to address the issues under a *Terry* stop and frisk analysis.[2]

---

**2.** This ruling also obviates an examination of whether Epperson complied with Ill.Rev.Stat. ch. 38 ¶¶ 107–14 and 108–1.01.