THOMPSON, Judge.
John Cuva appeals his conviction and sentence for possession of hashish.[1] Cuva was initially charged with possession of hashish in count I and possession of cannabis [2] in count II. The state nolle prosed count II and Cuva entered a plea of nolo contendere to count I reserving his right to appeal the denial of his motion to suppress evidence. We reverse.
Cuva argues that contraband seized from his vehicle should have been suppressed because he was illegally detained and because the warrantless search of his vehicle was not based upon probable cause or exigent circumstances. The state argues that Cuva was properly detained and given a pat-down search pursuant to the City of Orlando’s Youth Protection Ordinance. Further, thé state argues, the search of his car was valid because it was based upon probable cause that it contained contraband.
Cuva was stopped by an Orlando police officer because Cuva was in downtown Orlando after midnight and appeared to be under age 18.[3] The city’s Youth Protection Ordinance[4] prohibits the presence of minors in *276 downtown Orlando from 12:01 a.m. to 6:00 a.m. unless they are going to work, coming from work, engaged in approved activities, or accompanied by an adult. The officer asked Cuva’s age and for identification, and, when Cuva could not produce identification, the officer told Cuva that he would have to be detained. The officer also told Cuva that he would be searched whether or not he consented. The officer searched Cuva and found $1,850 in cash. He testified that the purpose of the search was to find weapons. Cuva was detained and led to a police substation.
At the substation, no effort was made to contact Cuva’s parents or to verify his age. Another officer asked Cuva where he parked his car and took Cuva’s keys without his permission. Cuva told the officer he might find a joint of marijuana in the car. The officer called for a K-9 unit to walk around the car. When the dog did not hit or alert on the vehicle, the officer unlocked the car and found marijuana and hashish under a hubcap on the front seat. Cuva was arrested and read his rights for the first time.
At the suppression hearing, the first officer testified that Cuva was doing nothing illegal when he first saw him. He stopped Cuva only because he appeared to be under age 18. The second officer said he suspected Cuva was involved in drugs because of the amount of money he was carrying and because Cuva told him he got the money cutting lawns. The officer also testified that once in police detention, Cuva’s keys were no longer his; thus, the officer took the keys and did not obtain Cuva’s permission to search the car. When the second officer arrived at the location of the ear, it was lawfully parked in a municipal parking lot. Absent Cuva’s statement, the police had no probable cause to search the vehicle. The state argues that violation of the city ordinance gave the police the authority to search Cuva and his car. We disagree.
The Youth Protection Ordinance allows the police to do several things once they question a person whose age they cannot determine: order the minor to leave downtown; issue the minor a trespass warning; or “take the minor into protective custody if the officer has reasonable grounds to believe that the minor has been abandoned or neglected, or is in immediate danger from his surroundings and that his removal is necessary for his own protection.” Orlando, Fla., City Code § 43.83(1) (1994). The officers did not issue Cuva a trespass warning or order him to leave downtown Orlando. They elected to detain him because he had no identification. As we read the ordinance, the officers could only detain Cuva if there was probable cause to believe he was abandoned, neglected or a threat to himself. Cuva met none of these criteria. Further, the supreme court has held that violation of a municipal ordinance is neither a “crime” nor a “noncriminal violation” as defined in the Florida Statutes. Thomas v. State, 614 So.2d 468, 472 (Fla.1993). In this case, only two penalties may be imposed for violating the ordinance. The first penalty applies to owners, operators, or employees of an establishment who violate the ordinance. They can be punished under various parts of section 1.08 of the City Code. Orlando, Fla., City Code § 43.84(1) (1994). Punishment includes a fine not to exceed $500.00 or a definite term of imprisonment not to exceed 60 days, or both; probation; restitution; public service; pretrial intervention; counseling or medical testing. Orlando, Fla., City Code § 1.08(l)-(9) (1994). The second penalty applies to minors who violate the ordinance. Following three or more violations, the city may contact the appropriate state agency to request an investigation of the minor’s home. Orlando, Fla., City Code § 43.84(2) (1994). There is no provision for *277 the minor to be detained unless it appears the minor has been abandoned or neglected, or unless the minor is in danger. Therefore, the ordinance gave the police no authority to detain Cuva once he told them his age.
The next inquiry is whether the police had another basis to detain Cuva. There is no doubt that the first officer had the right to stop Cuva to ask his age and for identification, even though he did not violate any law. Florida v. Bostick, 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The officer could ask questions as long as he did not coerce Cuva or interfere with his right to leave. Id. Consensual police encounters of this nature involve minimal intrusions into the fives of citizens and do not violate constitutionally protected interests under the Fourth Amendment. Gipson v. State, 667 So.2d 418 (Fla. 5th DCA 1996); State v. Simons, 549 So.2d 785 (Fla. 2d DCA 1989). We therefore conclude the first contact with Cuva was consensual. Simons at 787. However, once Cuva answered the officer’s questions, the officer could not detain him absent an articulable suspicion that Cuva had committed, was committing, or was about to commit a crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); § 901.151(2), Fla. Stat. (1993). The officer testified that Cuva was doing nothing unlawful when he encountered him. Furthermore, the officer pointed to no unusual behavior or other circumstances which could support a well-founded suspicion of criminal activity. Since there was no legal basis to detain Cuva, any evidence seized as a result of his detention should have been suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Woodson v. State, 579 So.2d 381 (Fla. 5th DCA 1991).
There is a separate and independent basis for suppressing the evidence seized from Cuva’s vehicle. The state argued that once Cuva admitted there was contraband in the car, there was probable cause to search the car. The facts do not support this theory. The officers took Cuva’s keys and searched his car even though he was not in or near the ear at the time of his detention. Officers are allowed to search a vehicle incident to the lawful arrest of a recent occupant. New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). Here Cuva was never seen in or near the vehicle. Even if he were lawfully in the officers’ custody when they learned where his car was parked, they had no legal basis to search his car without a warrant or his consent. The search was too remote in both place and time to be justified as a search-incident-to-arrest. State v. Howard, 538 So.2d 1279 (Fla. 5th DCA) (holding that search of car was not incident to arrest where arrestee had exited and locked car before he was approached by officer and then arrested), rev. denied, 548 So.2d 663 (Fla.1989).
Accordingly, we REVERSE and REMAND to the trial court to enter an order suppressing the evidence in the case.
W. SHARP, and HARRIS, JJ., concur.

. § 893.03(l)(c)4, Fla. Stat (1993).

. § 893.03(l)(c), Fla. Stat. (1993).

. The police learned later that Cuva was 18 years old.

. Orlando City Ordinance Sections 43.80-43.84 (1994), provide in pertinent part:
Section 43.80 — Purpose and Definitions
(2) Definitions.
(c) RESTRICTED HOURS means 12:01 a.m. until 6:00 a.m. on any day.
(g) HOLDING LOCATION means a place designated by the Chief of Police to which a minor taken into custody for a violation of this ordinance may be delivered to await pick up by a parent or juvenile authorities.
(h) MINOR OR JUVENILE means any person under the age of 18.
Section 43.81 — Violation
*276 (1) Except as provided in Section 43.82, a minor shall not enter or remain within the downtown area during the restricted hours.
Section 43.83 — Enforcement
(1) A law enforcement officer, upon finding a minor in violation of this ordinance, shall:
(a)order the minor to leave the restricted area for the remainder of the restricted hours; or
(b) take the minor into protective custody if the officer has reasonable grounds to believe that the minor has been abandoned or neglected, or is in immediate danger from his surroundings and that his removal is necessary for his own protection; or
(c) issue a trespass warning of a specific duration, which is limited to the downtown area during the restricted hours.