923 F.2d 849
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul Anthony COPELAND, Defendant-Appellant.
 No. 90-5489.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 6, 1990.
Decided Jan. 22, 1991.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge. (CR-89-465-S)
 John Maurice Hassett, Baltimore, Md., for appellant.
 Robert Reeves Harding, Assistant United States Attorney, Baltimore, Md., (Argued) for appellee; Breckinridge L. Willcox, United States Attorney, Jack V. Geise, Assistant United States Attorney, Baltimore, Md., on brief.
 D.Md.
 AFFIRMED.
 Before WILKINSON and NIEMEYER, Circuit Judges, and ROBERT R. MERHIGE, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Defendant Paul Anthony Copeland appeals his conviction for possession with intent to distribute heroin on three grounds: the denial of his pretrial motion to suppress, the admission of certain false exculpatory statements, and the admission of evidence allegedly obtained as the result of an unconstitutional search. Finding none of these contentions persuasive, we affirm.
 
 I.
 
 2
 The evidence at trial established the following. During the months prior to November 16, 1989, detectives and officers from the Metropolitan Police Department--Drug Enforcement Administration Task Force ("Task Force") were involved in an investigation of appellant Paul Anthony Copeland. Their original information came from two confidential informants. The first informant provided specific details about two neighborhoods in Washington, D.C., in which appellant allegedly dealt drugs. He also advised the detectives of the market price and daily profit of appellant's heroin dealing and the vehicles appellant allegedly used in connection with his illicit trade. The informant was able to describe the make, as well as the license plate numbers of these cars, which included a black Toyota 4-Runner, a burgundy BMW, and a black Ferrari. He also indicated a residence out of which appellant worked, at 13442 Overbrook Lane in Bowie, Maryland.
 
 
 3
 The second informant stated that he had supplied appellant with large quantities of heroin in 1988. Both informants selected appellant's photograph from arrays of photos.
 
 
 4
 Early on in the investigation, one of the task force members recalled that he had arrested the appellant six years earlier at one of the drug-dealing locations pinpointed by the first informant. At that time, two hundred bags of heroin had been recovered from appellant's car.
 
 
 5
 The Task Force undertook surveillance activities to corroborate the information from the first informant. Appellant was observed at the Overbrook Lane address several times. On one occasion he was washing a car in the driveway. One of the vehicles described by the informant, the Toyota 4-Runner, was observed in the driveway several times. Additionally, on one occasion, Detective Tyrone Thomas trespassed onto the property of 13442 Overbrook and peered into the windows of the garage where he saw a black Ferrari, similar to the one previously described.
 
 
 6
 Once in October and once in November of 1989, the detectives seized bags of trash from the curb in front of the 13442 Overbrook residence. On both of these occasions they recovered plastic quinine containers, playing cards, mannite, and several packets containing an opiate narcotic. Quinine and mannite are the primary substances used to cut heroin.
 
 
 7
 On the same day as the second trash search, Task Force members followed the appellant as he drove the third vehicle described by the informant, the Burgundy BMW, to a known drug-dealing location in Washington, D.C. The detectives observed the appellant leave the car, when he was approached and surrounded by a group of men. One of the men then walked to appellant's BMW, opened it with a key and entered it. He then walked back to where appellant was standing, and handed an unknown object to another male. This first unidentified male then walked back to the car with the appellant and the two men drove off. They drove to another of the drug locations identified by the first informant. Coincidentally, this was the very location of appellant's prior narcotics arrest. Upon leaving the car, appellant was again surrounded by a group of people on the street. Moments later, he left.
 
 
 8
 Two days later, the Task Force team obtained a search warrant for 13442 Overbrook from a U.S. Magistrate Judge. In the affidavit filed in support of the search warrant, Detective Tyrone Thomas recited the above-stated facts. Included among them was the statement that he had "observed a Black Ferrari parked in the garage of the house." No mention was made of the trespass.
 
 
 9
 Early that morning the team returned to 13442 Overbrook to stake it out. The detective observed the same Toyota 4-Runner parked in the driveway, along with a Toyota Cressida. At 7:30 a.m. they observed a man, later identified as Eric Thomas, walk out of the house, enter the Cressida and drive toward Washington, D.C. He was followed by members of the Task Force Team, and was arrested near the drug-prone areas identified by the first informant. The team confiscated 368 bags of heroin from a sack near the driver's seat of the car.
 
 
 10
 Fearing that appellant, or other co-conspirators, would be warned of Thomas' arrest, the Task Force Members immediately returned to Overbrook Lane. They observed appellant exit the house, carrying a gym bag, which he placed behind the front seat of the 4-Runner. Appellant then drove off, and was arrested a short distance from the house. The detectives searched the car, and discovered inside the gym bag approximately 140 grams of high-purity heroin, a smaller quantity of heroin ready for street sale, mannite and other narcotics paraphernalia. Appellant was given his Miranda warnings. The detectives then executed the search warrant for the house, where they recovered a large quantity of mannite, two handguns, a pistol-grip shotgun, and over $5,000 in cash.
 
 
 11
 On November 30, 1989, a two-count indictment was returned, charging the appellant with the crimes of conspiracy to distribute heroin and possession with the intent to distribute heroin. On January 4, 1990, a three-count superseding indictment was returned, adding a third charge of use of a firearm during a drug trafficking crime.
 
 
 12
 Various pretrial motions were filed. The trial judge entered a memorandum opinion and order denying most of the defense pretrial motions on the briefs. However the court called for an evidentiary hearing on the issue of appellant's custodial statements. Thereafter the appellant objected to the court's ruling on any of the suppression motions without the benefit of an evidentiary hearing. Consequently the trial court held a more extensive hearing. At the conclusion, appellant's motion to suppress custodial statements was granted, as was a motion in limine to exclude appellant's prior juvenile convictions, and a motion to exclude mention of a third firearm not charged in the indictment. The court once again denied the motion to suppress evidence seized during the warrantless search of appellant, and denied a Franks v. Delaware, 438 U.S. 154 (1978), motion concerning the search pursuant to the warrant.
 
 
 13
 After a jury trial, appellant was found not guilty of use of a firearm in a drug trafficking crime and not guilty of conspiracy to distribute heroin. He was, however, found guilty of possession with intent to distribute heroin. Appellant was sentenced to 73 months imprisonment, followed by a period of supervised release for three years.
 
 II.
 
 14
 On appeal, appellant argues that the trial judge erred by denying his motion to suppress evidence found as a result of appellant's warrantless arrest and the subsequent search of the car. He also contends that the trial court improperly allowed testimony which would tend to impeach his out-of-court statements. Finally, he maintains that the gym bag should have been suppressed because of the trespass committed by Detective Thomas.
 
 A. The Motion to Suppress
 
 15
 In its pre-hearing memorandum opinion and order, the trial court concluded that there was probable cause to arrest the appellant, and that the search of the car was incident to that valid arrest. The court reiterated this at the conclusion of the later evidentiary suppression hearing. Alternatively the court found that there was independent probable cause to support the search of the car and the containers therein. California v. Carney, 471 U.S. 386 (1985); United States v. Ross, 456 U.S. 798 (1982).
 
 
 16
 The appellant now contends that these determinations are incorrect. He argues that the facts known to the officers at the time of arrest, which are not disputed, do not create probable cause, and that his warrantless arrest was therefore unconstitutional. He asserts that if the search of the car cannot have been a search incident to arrest, it too is unlawful. He therefore disputes the district court's alternative opinion that the automobile search was independently supported by probable cause.
 
 
 17
 Probable cause exists where " 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.' " Draper v. United States, 358 U.S. 307, 313 (1959) (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). Information supplied by informants may be used by police to establish probable cause to arrest, so long as that information "is reasonably corroborated by other matters within the officer's knowledge." Jones v. United States, 362 U.S. 257, 269 (1960). The present case is well within Draper v. United States, 358 U.S. 307 (1959), in which probable cause to arrest was established by informant evidence, corroborated by the officers' direct observations of seemingly innocent activity. In fact, the present case is very similar to Illinois v. Gates, 462 U.S. 213 (1983), in which the Supreme Court found probable cause for a search warrant based on an anonymous informant tip, corroborated by police observations of noncriminal acts.
 
 
 18
 Because there was probable cause for appellant's arrest, the search of appellant's car and the gym bag was certainly proper. New York v. Belton, 453 U.S. 454 (1981). When a police officer makes a lawful custodial arrest of the occupant of an automobile, "he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." Id. at 460. This includes "the contents of any containers found within the passenger compartment." Id. Consequently, the seizure and search of appellant's gym bag was constitutionally valid.
 
 
 19
 As the district court noted, the search of appellant's car may, alternatively, be analyzed under the automobile exception to the warrant requirement. Police may make a warrantless search of an automobile if there is probable cause to believe the vehicle contains evidence of the crime, and it is likely, due to exigent circumstances, that the vehicle would be unavailable by the time a warrant is obtained. Chambers v. Maroney, 399 U.S. 42, 52 (1970); Carroll v. United States, 267 U.S. 132 (1925). Should these prerequisites exist, the police have authority to conduct a warrantless auto search "that is as thorough as a magistrate could authorize in a warrant." United States v. Ross, 456 U.S. 798 (1982). The only limitation on the scope of the search is "defined by the object of search and the places in which there is probable cause to believe that it may be found." Id. at 824.
 
 
 20
 Under the totality of the circumstances, the facts known to the police officers at the time of appellant's arrest did create probable cause to believe that contraband was present in the car, just as there was probable cause to support appellant's arrest. The police had information from an informant that appellant was selling drugs. This information had been corroborated by observations of appellant's suspicious behavior in known drug locations. Drug paraphernalia was found in the trash cans left in front of the house from which appellant emerged. Eric Thomas, who left the house prior to appellant on the morning of the arrest, was in possession of contraband. Finally, soon after Thomas' arrest, when it was likely that co-conspirators would have been informed of the arrest, appellant left the house with a gym bag. The totality of this evidence was sufficient to provide probable cause for the police officers' actions under the automobile exception.
 
 B. Appellant's Exculpatory Statements
 
 21
 The second issue on appeal concerns the admission of certain testimony at trial which discredited an out-of-court statement by appellant. At trial, two of appellant's neighbors testified that when they questioned the appellant about his livelihood, he told them that he ran a courier service. Appellant raised no objection to this testimony at trial. Rather, appellant objected to later testimony by Detective Thomas. When asked by the Assistant United States Attorney whether, in the search of 13442 Overbrook Lane, he recovered any paperwork pertaining to a courier service, the detective replied that he had not. Appellant objected to this testimony on the theory that it somehow violated the Fifth Amendment. The court overruled the objection.
 
 
 22
 On appeal, appellant has rephrased his objection. He now contends that this testimony was irrelevant under Fed.R.Evid. 401. The government, on the other hand, argues that this testimony is relevant as evidence of consciousness of guilt. See United States v. Livingston, 816 F.2d 184, 194 (5th Cir.1987) (jury may consider a false exculpatory statement as evidence of consciousness of guilt). Given the prior testimony of appellant's neighbors, and the obvious inference of a mens rea, admission of Detective Thomas' testimony was within the broad scope of Rule 401.
 
 C. The Trespass
 
 23
 Appellant's last argument is that the trial court erroneously admitted the gym bag evidence which was a fruit of Detective Tyrone's warrantless, and therefore unconstitutional, entry onto appellant's property, when he peered into the garage window and observed a black Ferrarri. Although this unlawful act was one piece in the jigsaw of facts which created probable cause for the arrest and search, it is clear that its weight was de minimis. The overwhelming untainted remaining evidence independently supports probable cause. Wong Sun v. United States, 371 U.S. 471, 487 (1963); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392 (1920). Consequently, the district court's determination will be affirmed.
 
 III.
 
 24
 Accordingly, we affirm the conviction of appellant.
 
 
 25
 AFFIRMED.