# AMERICAN SAMOA GOVERNMENT, Plaintiff,

## v.

## STEVEN KAPLAN, Defendant.

High Court of American Samoa ·
Trial Division

CR No. 20-99

September 1, 1999

Before KRUSE, Chief Justice, SAGAPOLUTELE, Associate Judge, ATIULAGI, Associate Judge.

Counsel: For Plaintiff, John W. Cassell, Assistant Attorney General
For Defendant, Patricia Penn, Assistant Public Defender, and
Mitzie J. Folau, Assistant Public Defender

Defendant Steven Kaplan is charged with one count of Unlawful Possession of a Controlled Substance, in violation of A.S.C.A. §§ 13.1022 and 13.1006. On August 13, 1999, a hearing was held on defendant's three separate motions to suppress evidence, all of which were filed on July 12, 1999. Those motions, listed in the order in which they were argued, may be described briefly as follows:

> a. Motion to suppress test results—this motion seeks to suppress the results of field tests conducted to determine the identity of a seized substance believed to be marijuana.

> b. Motion to suppress evidence—this motion requests the suppression of physical evidence seized in the course of effecting defendant's arrest.

> c. Motion to suppress statements—this motion arises out of an alleged failure to provide constitutionally-required *Miranda* warnings.

Plaintiff American Samoa Government ("ASG") responded to defendant's motions on July 20, 19 and 29, 1999, respectively. The hearing was held with all counsel and the defendant present.

## Discussion

The facts relevant to each motion will be addressed with the individual discussions below.

### A. Motion to Suppress Field Test Results

.On the evening of March 21, 1999, Special Agent David Snow ("Agent Snow") and Sergeant Maturo Ta`afua ("Sergeant Ta`afua") went to defendant's house in connection with a complaint that he had lodged against his neighbors for noise and disturbing the public peace. After discussing the incident, defendant invited the officers into his dwelling, where they found in plain view and, as will be discussed below, hidden throughout the small room—quantities of a substance that appeared to them to be marijuana. Upon returning to Substation West, Officers Snow and Ta`afua turned the evidence over to Lieutenant Vaeto'elau Laumoli, who performed field tests, known as Duquenois-Levine tests, on the seized substance. The field tests indicated the presence of tetrahydrocannibinols (THC), the active ingredient of marijuana, and it is these test results which defendant now seeks to suppress on the ground that the government has failed to demonstrate their scientific validity.

This court recently issued an opinion on this exact same issue in CR No. 19-99, *American Samoa Government v. Fa`atui Isaia.* As in that case, ASG has indicated in its brief herein that it will also introduce the results of more accurate forensic tests yet to be performed, such that the introduction of the results of the field tests would be merely cumulative evidence on the issue of the substance's identity. In denying the motion to suppress, the court in *Fa`atui* reasoned as follows:

> Whether properly styled as a motion to suppress or as a motion *in limine,* we find no basis for excluding the results of the field tests. ASG has specifically stated that this evidence will not be introduced for the purpose of proving the *nature* of the substance, but rather simply to establish chain of custody. Although they do not purport at this time to have knowledge regarding the validity of the process or its degree of acceptance in the scientific technical community, [the public safety officers] do appear to be qualified to testify regarding their administration of the tests and the results therefrom, as well as to their training and expertise in conducting such tests.

> If ASG fails to introduce further forensic evidence—which would effectively convert the field test results from potentially cumulative evidence into the sole evidence of the substance' s identity—then [defendant]'s motion may be renewed.

Order Denying Defendant's Motion to Suppress Test Results, slip op. at 2-3 (Trial Div. August 2, 1999). We see no reason to deviate from this analysis in the instant case.

B. Motion to Suppress Evidence Seized During Arrest

Defendant's second motion seeks to suppress evidence seized at his home during a search contemporaneous with his arrest. The facts relevant to this motion were not disputed at the hearing. Upon entering defendant's room, certain items were—apparently conceded—discovered in plain view, including some amount of marijuana and a gram scale used for weighing quantities of marijuana. However, additional evidence was discovered which was not readily visible to the arresting officers, and it is this evidence which defendant seeks to suppress through this motion. Specifically, according to the hearing testimony of Agent Snow, the officers located additional quantities of a substance believed to be marijuana during and immediately after cuffing the defendants' hands behind his back. One baggie, containing three cigarettes, was found under the mattress of the bed located just behind where defendant was standing; an additional quantity of suspected marijuana was uncovered beneath some papers in an open box located

88

approximately two to four feet from the defendant.

Defendant does not contest that probable cause existed for his arrest, and the Supreme Court has long recognized that certain limited searches, conducted contemporaneously with and incident to a legal arrest, are not violative of the Fourth Amendment.[1] While searches of the arrestee's person have been found to be legal *per se* under *United States v. Robinson,* 414 U.S. 218 (1973), the Supreme Court has expanded the scope of permissible searches to also include "the area into which an arrestee might reach in order to grab a weapon or evidentiary items" or the area "within his immediate control." *Chimel v. California,* 395 U.S. 752, 763 (1969).

Police officer safety, as well as the need to protect evidence which might be quickly and easily destroyed, serves as the underlying rationale for this exception to the warrant requirement. In that regard, the defendant's immobilization via handcuffs would appear to defeat the purpose of the "immediate control area search," thereby rendering it illegal. ASG, however, urges our consideration of *Robinson, supra,* in which the Court explicitly found that even where the particular circumstances of the arrest do not demonstrate any likelihood of danger or destruction of evidence, the search may nevertheless be legal: "The authority to search the person . . . does not depend on what a court may later decide was the [degree of risk] in a particular arrest situation." 414 U.S. 218, 235. As quoted above, though, the *Robinson* holding was limited to clarifying the authority to search "the person" incident to arrest. *Id.* Indeed, the Court had gone to great pains to explicitly note this distinction:

> [The search incident to lawful arrest] has historically been formulated into two distinct propositions. The first is that a search may be made of the *person* of the arrestee. The second is that a search may be made of the area within the control of the arrestee.
> Examination of this Court's decisions shows that these two propositions have been treated quite differently. The validity of the search of a person incident to a lawful arrest has been regarded as settled from its first enunciation, and has remained virtually unchallenged until the present case. The validity of the second proposition, while likewise conceded in principle, has been subject to differing interpretations as to the extent of the area which may be searched.

*Id.* at 224 (emphasis in original). We agree that, while stemming from the same rationale, these two searches present very different

---

[1] The Fourth Amendment to the U.S. Constitution is mirrored in our own Revised Constitution of American Samoa at Article 1, Section 5.

considerations, and we are not inclined to extend *Robinson's* bright-line test to automatically permit search of the "immediate control area" in any given arrest situation.

ASG similarly offers *New York v. Belton* as analogous to the circumstances in this case. 453 U.S. 454 (1981). In that case, police officers arrested the occupants of an automobile upon probable cause, and then proceeded to thoroughly search the interior of the passenger compartment even after the arrestees had been handcuffed and removed a safe distance from the vehicle. Among the evidence ultimately discovered was a quantity of cocaine located in a zipped jacket pocket left on the back seat. Refusing to suppress this evidence, the Supreme Court upheld the search and found that the entirety of the passenger compartment had been "within the arrestee's immediate control" within the meaning of the *Chimel* case. *Id.* at p. 462. Although this case does address the "immediate control area" issue directly, we again find its application to be limited. As in *Robinson,* the Court fashioned a bright-line rule permitting a certain category of searches; in doing so, however, it narrowly defined the question presented to "the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants." *Id.* at 459. Moreover, the Court explicitly cautioned that "[o]ur holding today does no more than determine the meaning of *Chimel's* principles in this particular and problematic context." *Id.* at 460, n.3. Given this careful limiting language, we believe that the *Belton* court did not intend that its holding should be applied to non-automobile arrest situations.

 Unlike searches of the person or automobiles, which are now governed by the bright-line rules of *Robinson* and *Belton* as discussed above, "immediate control area" searches of premises remain subject to a case-by-case analysis of factors indicating the presence or absence of risk to officers or evidence. Most courts examining the issue have held, and we agree, that placing a defendant in handcuffs effectively limits his "control" over his surrounding area such that the continued search of such area, in most circumstances, becomes unwarranted. *United States v. Blue,* 78 F.3d 56 (2nd Cir. 1996) (search by lifting mattress off box spring improper where defendant was handcuffed and on the floor, two feet from the bed). *See also United States v. McConnell,* 903 F.2d 566 (8th dr. 1990); *United States v. Bonitz,* 826 F.2d 954 (10th Cir. 1987); *United States v. Lyons,* 706 F.2d 321 (D.C. Cir. 1983); *United States v. Cueto,* 611 F.2d 1056 (5th Cir. 1980); *United States v. Berenguer,* 562 F.2d 206 (2d Cir. 1977). However, we also reject the notion that the very fact of handcuffing alone necessarily causes the search to be illegal. *Young v. United States,* 670 A.2d 903 (D.C.App. 1996) (defendant's restraints did not render search illegal when police had strong reason to believe that guns were nearby); *United States v. Home,* 4 F.3d 579 (8th Cir. 1993) (search of couch where arrestees had been sitting found to be

lawful even when defendants were handcuffed because officers "could reasonably have believed that weapons were within reach of the handcuffed detainees"); *United States v. Bennett,* 908 F.2d 189 (7th Cir. 1990) (fact of handcuffing not dispositive when loaded weapons had already been found in plain view and there was reasonable possibility that accomplices could "burst into the room to try to help their friends").

Because defendant's handcuffing is persuasive but not necessarily dispositive[2], we must therefore consider the other circumstances relating to this particular arrest. In analyzing similar situations, courts have looked to many factors, including the nature of the alleged crime, the likelihood that weapons would be found and the ratio of arresting officers to arrestees. In reviewing the facts of the arrest in the instant case, given the arrestee's immobilization, we do not find the degree of risk necessary to justify the search. Indeed, we can hardly conceive of an arrest situation *less* fraught with danger: the suspected crime, possession of marijuana, was nonviolent in nature, and the evidence of that crime not easily destructible by a handcuffed arrestee; defendant was not surprised in the act of committing a crime, but rather *invited* the officers into his dwelling; he was clearly alone, arrested by two able officers, and showed no sign of resistance whatsoever; and the scene, as acknowledged by Agent Snow as a small one room "box" type shack without windows and one doorway, hardly admits the hidden accomplices possibility.

In its brief, ASG further argues that policy considerations favor a standard which would give arresting officers *carte blanche* authority to search within a limited radius even after handcuffing an arrestee. To rule otherwise, it contends, would place "a premium on foolhardiness on the part of officers" because "[t]hey could *only* perform the search if they left a suspect at liberty to move around and possibly gain control of a weapon." Memorandum in Opposition, at 9 (emphasis added). On the contrary, we believe that there is another way that the search could be conducted even with due regard for officer safety, namely, that method which is required by the Fourth Amendment: take the minimal time and effort necessary to obtain a proper search warrant. Having physically secured the arrestee under the circumstances of this case; we find no reason that Agent Snow and Sergeant Ta`afua could not safely have obtained a warrant for any further search of the room.

---

[2] *Cf. United States v. Jones,* 475 F.2d 723, 728 (5th Cir. 1973):
 [Whether hands were cuffed in front of behind the body is] relevant to weapons or destructible evidence is the crucial factor in the *Chimel* analysis.

## C. Motion to Suppress Statements

Finally, defendant seeks to suppress certain statements made by him on the ground that they were made in the absence of constitutionally-required *Miranda* warnings. In *Miranda v. Arizona,* the Supreme Court set forth the requirements for advising a defendant of his legal rights prior to custodial interrogation. 384 U.S. 436, 444-5 (1966); *ASG v. Vagavao,* 3 A.S.R.3d 72, 76-77 (Trial Div. 1999).

■ With one notable exception, the facts regarding these statements are not in dispute, and are recounted in ASG's response brief. Upon entering defendant's room and seeing the suspected marijuana on the table, Agent Snow asked two questions: "What? You invite cops into your room with dope on the table?" and "What do you expect us to do now, just walk away and forget this happened?" The defendant responded to each by shaking his head and looking down at the floor. After receiving no verbal response, Agent Snow proceeded to ask "Where is the rest of the stuff because I know there's more?" The defendant responded pleadingly, "Come on, Dave; come on, Dave."

Defendant was then placed under arrest, and it is at this point that we reach the critical disputed question of fact. At the hearing, Agent Snow testified that, at the time of the arrest, he advised defendant of his full constitutional rights; his written report, however, simply recorded that he had reminded defendant of his "right to remain silent," only one component of those warning required by *Miranda.* This entry in the report notwithstanding, we rule as a finding of fact that Agent Snow did indeed advise defendant of the entirety of his constitutional *Miranda* rights, as he asserted at the hearing. Agent Snow is an experienced and well-trained officer who has certainly made dozens of arrests throughout his career. To such an officer, the *Miranda* warnings necessarily become a rote recitation, memorized and administered routinely at the time of arrest. Ironically, we would be more troubled if the disputed issue of fact was whether any of the *Miranda* rights were given at all; under the instant circumstances, however, we think it highly unlikely that Agent Snow would have given the defendant only a subset of those rights which he had been trained to give.[3]

---

[3] We realize that police reports are hardly produced with the needs of defense counsel in mind, but public safety officers would be well-advised to use in their written reports a more accurate and inclusive term such as "constitutional rights" or *"Miranda* rights," given Agent Snow's testimony at the hearing we are not particularly troubled by the report entry. Although it is of critical importance that the full *Miranda* warnings actually be given, we do recognize that, as a term of reference to this process, "the right to remain silent" may be viewed by some— however incorrectly—as an interchangeable descriptive phrase.

Given these facts, therefore, we find no grounds for suppressing any of defendant's statements. The initial questions and responses prior to the arrest pose no difficulty, as they did not amount to custodial interrogation within the meaning of *Miranda. See ASG v. Taylor,* 19 A.S.R.2d 105, 106-07 (Trial Div. 1991). Although defendant may or may not have felt free to leave, these unique circumstances—in which the defendant freely invited the officers into his home containing marijuana in plain view—lead us to believe that the pre-arrest conversation was not custodial in nature.

With respect to statements made by the defendant after his arrest, we find that any such statements were made subsequent to his being advised of his full constitutional rights, and we find no reason to believe that those statements were not made freely and voluntarily. Defendant is an educated adult, a teacher. He was given his *Miranda* warnings, and Agent Snow even expounded at additional length upon his right to remain silent. Finding no evidence to support an implication of coercion, we therefore decline to suppress defendant's statements in this matter.

## Order

For the foregoing reasons, defendant's motions to suppress test results and defendant's motion to suppress statements are hereby denied. Defendant's motion to suppress evidence not seen in plain view is hereby granted.

It is so ordered.

---

Moreover, Agent Snow did have a reasonable explanation for the entry, testifying that in the course of advising the defendant of all of his constitutional rights, he had particularly expounded upon the right to remain silent, and had merely meant the report to reflect this fact.