**UNITED STATES of America,
Plaintiff,**

v.

**Antwan COTTEN, Defendant.**

**No. CR–3–02–039.**

United States District Court,
S.D. Ohio,
Western Division.

Dec. 5, 2002.

Sheila Lafferty, Dayton, OH, for Plaintiff.

Patrick Mulligan, Richard Skelton, Dayton. OH, for Defendant.

## DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DOC. # 18)

RICE, Chief Judge.

Defendant Antwan Cotten ("Defendant" or "Cotten") is charged in the Indictment (Doc. # 14) with one count of possessing a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g); one count of possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c); and one count of possessing with intent to distribute more than five grams of crack cocaine, in violation of 21 U.S.C. § 841(a).

This case is now before the Court on the Defendant's Motion to Suppress Evidence (Doc. # 18). With that motion, the Defendant requests that the Court suppress both the evidence which was seized during the early morning hours of March 8, 2002, from the automobile in which he was passed out, and any statements he may have subsequently made to police officers. Cotten contends that the evidence was taken from the automobile in violation of his rights under the Fourth Amendment and that his statements to officers constitute fruit of that poisonous tree.[1] On August 22, 2002, the Court conducted an oral and evidentiary hearing on that motion. In accordance with the briefing schedule, the parties have filed their post-hearing memoranda. *See* Docs. # 28 and # 29. The Court now rules on the Defendant's Motion to Suppress Evidence (Doc. # 18).

During the early morning hours of March 8, 2002, Officers Jon Moeggenberg ("Moeggenberg") and Michael Richardson ("Richardson") of the Trotwood, Ohio, Police Department were dispatched to the parking lot at 254 Glenside Drive in Trotwood, to investigate a possible automobile accident involving a black Buick Park Avenue ("Buick") and another automobile. The officers were dispatched as a result of a call by a woman who had indicated that the Buick had either hit or almost hit her automobile. She also said that the occupant of the Buick was lying back in his seat and could be dead. The two officers were driving separate police cruisers, and Moeggenberg arrived first, at 5:26 a.m. He observed the Buick parked partially up on the grass, only a few inches from another vehicle. Moeggenberg initially spoke with the woman who had called, after which he examined her vehicle and the Buick, concluding that Buick had not stuck the woman's car. Moeggenberg then permitted the woman to leave in her car to go to

---

1. During the oral and evidentiary hearing conducted on the Defendant's motion, his counsel stated that suppression of Cotten's statements was not being sought on the basis that the officers violated the rule established in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), or because those statements were involuntary. Transcript of August 22, 2002, Hearing (Doc. # 24) at 4.

work and turned his attention to the Buick.

Moeggenberg could see that one person, Cotten, was inside the Buick, either sleeping, passed out or dead. To check on the status of the occupant, Moeggenberg approached that vehicle from the driver's side. Richardson, who had arrived by that time, approached from the passenger's side. Although the windows of the Buick were tinted and it was dark outside, the officers were able see inside that vehicle, because the lights from their cruisers illuminated the interior. When Moeggenberg got to the driver's side window, he could see a chrome.357 revolver sitting on the passenger's seat.[2] Moeggenberg called out his discovery to Richardson. At that point, Moeggenberg opened the driver's side door to the Buick, identified himself as a police officer and ordered the Defendant to show his hands. The Defendant awoke and looked at Moeggenberg. He also began to move his hands from his lap toward the revolver on the passenger's seat, which caused Moeggenberg to draw his weapon and point it at the Defendant's head, while ordering him put up his hands. The Defendant ultimately acceded to that command and raised his hands. At that point, Moeggenberg ordered the Defendant to get out of the Buick, pulling on the Defendant's left arm to emphasize his command, and to lie on the ground. After the Defendant had complied, Richardson put handcuffs on him. Before placing the Defendant in a cruiser, the officers conducted a pat-down of him, finding $1,924 in bills of small denomination in his front right pocket.

The Buick was registered to Defendant's girlfriend, who lived across the street from the parking lot where the officers had discovered Cotten parked in the Buick. After the officers were unable to contact her, Richardson began an inventory search of the vehicle in preparation for having it towed. When he looked in the glove compartment, he discovered a significant amount of cash. As a result of discovering significant amounts of cash on the Defendant's person and in the automobile he had occupied, the officers began to suspect that he was involved in the distribution of controlled substances. Accordingly, they requested that Officer Greg Saylor and his drug detection dog, Coal, come to the site. Thereafter, Coal alerted on the center console of the vehicle. Moeggenberg then looked inside the console and discovered a baggie containing a large rock of crack cocaine and a baggie containing a small amount of marijuana. During the subsequent search of the vehicle, additional amounts of currency were discovered in the trunk and under a seat rest in the back seat.

█ In his post-hearing memorandum (Doc. # 29), the Defendant argues that the Court must suppress all evidence seized from the Buick, because the revolver was not in plain view. In other words, Cotten argues that the Court should believe his version of events, rather than that testified to by Moeggenberg and Richardson. The Court agrees with the Defendant's premise that the evidence seized from the vehicle must be suppressed, if Moeggenberg did not see the revolver on the passenger's seat as he testified. Indeed, the Government has not argued that the evidence need not be suppressed if the Court does not believe the officers' version of events. However, the Court concludes that the officers' version of events, rather than that

---

**2.** As is explained below, the Defendant testified that the revolver was under the seat of the Buick and that, as a consequence, Moeggenberg could not have seen it. For reasons set forth below, the Court finds the testimony of the two officers to be credible, and that of Cotten not credible.

testified to by the Defendant, is worthy of belief. Thus, the Court finds that Moeggenberg did see the revolver on the passenger's seat of the Buick. Based upon that finding, the Court concludes that the subsequent searches of the Buick did not violate the Fourth Amendment.[3] The Court begins its analysis by examining the testimony by the Defendant and the officers, following which it sets forth its reasons for believing the testimony of Moeggenberg and Richardson, rather than that of the Defendant, and, thus, finding that Moeggenberg saw the revolver on the passenger's seat as he testified.

Cotten testified during the oral and evidentiary hearing that he was asleep in his girlfriend's car, the Buick, when an officer knocked on the window causing him to awaken. Transcript of August 22, 2002, Hearing (Doc. # 24) at 50. The officer asked him to step out of the car, and Cotten complied. *Id.* The Defendant also gave the officer identification as directed. *Id.* After patting Cotten down, the officer handcuffed him and began to search the Buick. *Id.* Up to that point, there had been no mention of a gun. *Id.* The Defendant acknowledged that a revolver was in the Buick; however, he indicated that it was not visible, since it was under a seat. *Id.* at 55. That testimony is contrary to Moeggenberg's, to the effect that he saw the revolver on the passenger's seat, when he looked through the driver's window. *Id.* at 17. In addition, the Defendant's testimony contradicts that given by Richardson, who indicated that Moeggenberg had said that a gun was inside the Buick, when the officers approached the vehicle while the Defendant remained inside. *Id.* at 43–44. Richardson also testified that he saw the Defendant's hand near the revolver, thus indicating that the revolver was on the passenger's seat of the vehicle. *Id.* at 44.

The Defendant's testimony was not believable for a number of reasons. The Defendant testified that he had spent the previous night partying with his cousin, drinking alcohol and smoking marijuana. After he drove to the parking lot at 254 Glenside Drive, rather than get out of the Buick and walk to his girlfriend's apartment across the street, where he lived, he passed out while still in the vehicle. The Defendant was unable to recall how long he had been at his cousin's house. He testified that, when he exited from the Buick, he did not know where he was. Doc. # 24 at 59. The foregoing testimony causes the Court to find that the Defendant drove to the parking lot at 254 Glenside Drive in a drunken and/or drug induced stupor and proceeded to pass out. When he was awakened by police officers and got out of the vehicle, he was not sufficiently aware of his surroundings to know where he was. Thus, it is quite possible that the Defendant was not aware or could not remember that a revolver was on the passenger's seat of the Buick.

---

3. In his motion, the Defendant also argued that the officers violated his rights under the Fourth Amendment by approaching the Buick and detaining him. *See* Doc. # 18 at 1. Since the Defendant did not make a similar argument in his post-hearing memorandum, it has been waived. However, if the Defendant had made such an argument, the Court would have rejected same. The Fourth Amendment limits the ability of government agents to conduct searches and seizures. Since the officers did not search or seize the Defendant by approaching the Buick in which he was passed out, they did not violate the Fourth Amendment by doing so. Based upon reasoning set forth below, the Court concludes that the detention of the Defendant was a lawful arrest supported by probable cause. Therefore, that detention did not violate the Fourth Amendment. *See Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (holding that a warrantless arrest does not violate the Fourth Amendment if, at the time of the defendant's arrest, police had probable cause to believe that an offense has been, is being, or will be committed).

Moreover, Defendant's testimony concerning events after he was awakened by the police officers is not believable when viewed in light of the fact that he had just awakened from a drunken and/or drug induced stupor. Given that state, it is difficult to believe that he would have had the perfect memory, as his testimony indicated, of the events which occurred immediately after being awakened. When he testified about those events, the Defendant failed to express any degree of uncertainty about what had occurred, even though he had just awakened from an alcohol and/or drug induced stupor. In sum, the Court does not find the Defendant's testimony to be believable.

The Defendant argues that the Court should disbelieve Moeggenberg's testimony, because it was partially contradicted by the testimony he gave during the detention hearing conducted on March 12, 2002.[4] During the suppression hearing, Moeggenberg testified that the keys were in the ignition and the Buick's engine was running, when he approached the vehicle. *See* Doc. # 24 at 20. However, during the detention hearing, when asked whether he had cited the Defendant for driving under

the influence, Moeggenberg testified the keys were not in the ignition and that they were either in the Defendant's lap or on the floorboard. Doc. # 27 at 24–25. The Court agrees with Defendant that Moeggenberg's prior inconsistent testimony detracts from his credibility. Nevertheless, the Court believes the officer's testimony that the revolver was in the passenger's seat, in no small measure because it was supported by Richardson's testimony. Notably, the Defendant has not suggested a principled reason for doubting Richardson's credibility.

In sum, the Court finds that the testimony by Moeggenberg and Richardson is believable, while that by Cotten was not. Accordingly, the Court finds that Moeggenberg saw a revolver on the passenger's seat of the Buick and that, therefore, all else that followed was constitutionally permissible.

■ Given that Moeggenberg saw the revolver in plain view on the passenger's seat,[5] the officers had probable cause to arrest the Defendant for transporting a firearm in a motor vehicle in violation of Ohio Revised Code § 2923.16(C).[6] In *New*

---

4. The Defendant also contends that Moeggenberg's testimony was not credible, because he would not have been able to see into the Buick due to the tinting on its windows. Although the windows of the Buick were tinted, that fact does not cause the Court to disbelieve Moeggenberg. He testified that he could see into the vehicle because of the lights from the police cruisers. That testimony is buttressed by Government Exhibit 2, a photo of the Buick, in which one can easily see into the vehicle through its tinted windshield, as a result of illumination.

5. In *United States v. Taylor*, 248 F.3d 506, 512 (6th Cir.), *cert. denied*, 534 U.S. 981, 122 S.Ct. 414, 151 L.Ed.2d 315 (2001), the Sixth Circuit reiterated that "[t]he plain view exception to the warrant requirement applies when (1) the officer did not violate the Fourth Amendment in arriving at the place where the evidence could be plainly viewed, (2) the item is in

plain view, and (3) the incriminating character of the evidence is immediately apparent. *See Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)." Herein, all three requirements for the plain view doctrine were met. *First*, Moeggenberg did not violate the Fourth Amendment by standing outside the Buick. *Second*, based on the testimony of Moeggenberg and Richardson, the Court finds that the revolver was in plain view. *Third*, the incriminating character of the revolver was immediately apparent.

6. Section 2923.16(C) provides:

(C) No person shall knowingly transport or have a firearm in a motor vehicle, unless it is unloaded and is carried in one of the following ways:
(1) In a closed package, box, or case;
(2) In a compartment that can be reached only by leaving the vehicle;

York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court established that, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of the arrest, search the passenger compartment of that automobile." *Id.* at 460, 101 S.Ct. 2860. *Accord, United States v. Martin,* 289 F.3d 392, 399 (6th Cir.2002). *See also, United States v. Hudgins,* 52 F.3d 115 (6th Cir. 1995) (holding that *Belton* permits the search of the passenger compartment of an automobile even when the defendant is arrested outside, as long as the officer made initial contact while the defendant was inside the automobile), *cert. denied,* 516 U.S. 891, 116 S.Ct. 237, 133 L.Ed.2d 165 (1995). Consequently, the seizure of the currency and drugs from the passenger compartment of the Buick did not violate the Fourth Amendment.[7]

Based upon the foregoing, the Court overrules the Defendant's Motion to Suppress Evidence (Doc. # 18).

(3) In plain sight and secured in a rack or holder made for the purpose; [or]

(4) In plain sight with the action open or the weapon stripped, or, if the firearm is of a type on which the action will not stay open or which cannot easily be stripped, in plain sight.

7. When the officers patted the Defendant down, they seized $1,924 in currency from him. The Defendant had been arrested before he was patted down. It is settled that an officer may lawfully search a person as an incident to a lawful arrest. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Thus, the seizure of the currency from the Defendant's person did not violate the Fourth Amendment.

In addition, some currency was found in the trunk of the Buick. Although the rule announced in *Belton* did not authorize the officers to search the trunk, the trunk was not searched until after the officers had discovered the baggie containing crack cocaine in the vehicle's center console. The discovery of the drugs, along with the currency in glove compartment and on the Defendant's person, gave the officers probable cause to search the vehicle. It is axiomatic that the warrantless search of an automobile does not violate the Fourth Amendment, if officers have probable cause to believe that the vehicle contains contraband or evidence of a crime. *See e.g., California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). In other words, the officers were not required to obtain a search warrant before searching the Buick.