JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} James Terry appeals the trial court's denial of his motion to suppress. For the following reasons, we affirm.
 {¶ 2} On April 20, 2007, Mr. Terry pled not guilty to a four-count indictment that included one count of possession of drugs, two counts of drug trafficking, and one count of possession of criminal tools.
 {¶ 3} On September 19, 2007, Mr. Terry filed a motion to suppress, to which the State timely responded.
 {¶ 4} On January 18, 2008, the court held the suppression hearing. Closing arguments on the motion were held on January 28, 2008.
 {¶ 5} On February 5, 2008, the court denied Mr. Terry's motion to suppress and placed its findings of fact and conclusions of law on the record.
 {¶ 6} On April 29, 2008, the case proceeded to jury trial.
 {¶ 7} On May 1, 2008, Mr. Terry was found guilty of possession of drugs, guilty of drug trafficking, not guilty of possession of criminal tools, and not guilty of the remaining count of drug trafficking.
 {¶ 8} On May 21, 2008, Mr. Terry was sentenced to five years in prison.
 {¶ 9} Terry appeals, asserting one assignment of error for our review.
 "The trial court abused its discretion in denying Mr. Terry's suppression motion."
 {¶ 10} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions *Page 4 
and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." State v. Burnside,100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. (Internal citations omitted.)
 {¶ 11} However, with respect to the trial court's conclusions of law, we apply a de novo standard of review and decide whether the facts satisfy the applicable legal standard. Id., citing State v.McNamara (1997), 124 Ohio App.3d 706.
 {¶ 12} After accepting the trial court's findings, we must independently determine as a matter of law whether the applicable legal standard has been satisfied. State v. Lloyd (1998), 126 Ohio App.3d 95.
 {¶ 13} In the case sub judice, the evidence garnered incident to Mr. Terry's arrest came from his involvement as a drug seller in a buy/bust operation set up by the Cleveland Police Department's Second District Strike Force through the use of an informant named Mankins. This operation was led by Detectives Mitchell and Graves.
 {¶ 14} At the suppression hearing, Detective Mitchell testified that he was first introduced to Mankins through his former partner, Detective Matos, with whom Mankins had worked as an informant on at least one prior buy/bust operation. (Tr. 38.) On the night in question, Mankins met with Detective Mitchell at a convenience store before the buy/bust operation. There, he provided Mitchell with a physical description of Mr. Terry and his automobile's make, size, and color before Terry arrived at Mankins' home to complete the transaction. Detective Mitchell sat with *Page 5 
Mankins as he called Mr. Terry via cell phone to set up the transaction. After searching Mankins' car, Detective Mitchell patted Mankins down and gave him the "buy money": $500 in marked, pre-photocopied bills.
 {¶ 15} According to Mankins' testimony, Mr. Terry arrived at Mankins' home, exited his automobile, went to Mankins as he sat in his automobile, entered Mankins' auto for two minutes, exchanged drugs Mr. Terry brought for Mankins in exchange for Mankins' buy money, and returned to his automobile.
 {¶ 16} Once the transaction was complete, Mankins flashed the brake lights of his automobile. This was a pre-arranged signal he worked out with the police to notify them when the exchange was consummated. After this, Mankins testified that the police "swarmed"; he was arrested and placed on the ground, and he saw detectives arresting Mr. Terry.
 {¶ 17} In his appeal, Mr. Terry attacks the reliability of the stop, since one of the State's witnesses, Detective Michael Rinkus, testified the car was white (Tr. 26.), while Mankins described it as a burgundy Buick Regal. (Tr. 45.) However, this discrepancy makes no difference regarding the underlying probable cause necessary to stop and frisk Mr. Terry. Detective Rinkus later clarified himself by testifying that he was uncertain of the car's color because he was more concerned with searching the inside of the car than remembering what the outside of the car looked like. (Tr. 27.) Further, Mankins himself provided sufficient independent indicia of reliability for the stop by correctly predicting the car's color during his meeting with Detective Mitchell. (Tr. 97.) *Page 6 
 {¶ 18} Mr. Terry also argues that the police lacked probable cause to stop him because there was no evidence that any of the officers saw the transaction take place, nor was the transaction recorded in any way. He argues that no police officer actually saw the hand-to-hand transaction take place; he was merely sitting in his vehicle on private property when accosted by the police.
 {¶ 19} He further argues that the only direct evidence concerning the alleged drug transaction was provided by Mankins, who admittedly had never worked as an informant with these detectives before and was operating in this capacity strictly to "bring them cases" in exchange for consideration at sentencing for his own felony cases. (Tr. 39, 56.)
 {¶ 20} Even with the credibility and reliability issues Mankins presents, the evidence adduced at the suppression hearing reveals the that police still had probable cause to stop Mr. Terry.
 {¶ 21} "Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. But it requires something more than an inchoate and unparticularized suspicion or `hunch.'" State v. Jordan, 104 Ohio St.3d 21, 2004-Ohio-6085, quotingTerry v. Ohio (1968) 392 U.S. 1, 27. "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the circumstances." State v. Bobo (1988), 37 Ohio St.3d 177, 178, citingState v. Freeman (1980) Ohio St.2d 291. "[T]he circumstances surrounding the stop must `be viewed through the eyes of a reasonable and cautious police officer on the *Page 7 
scene, guided by his experience and training.'" Bobo at 179, quotingUnited States v. Hall (1976), 525 F.2d 857, 859.
 {¶ 22} While the exact color of the car is an issue of some disagreement, Mankins' specific testimony about the car's color and its interior is not. His testimony regarding the specific location where Mr. Terry kept his drugs, all of which he predictively relayed to Detective Mitchell before the operation, lends singular reliability to Mankins' testimony. This is true especially in light of the fact that the buy/bust in question took place in Mr. Mankins' car, not Mr. Terry's. That is, Mankins was able to predict from his own memory not only the color of Mr. Terry's vehicle, but also where Terry would have hidden his drugs inside the vehicle. Indeed, members of the take-down team found the drugs in the exact location Mankins predicted they would be: in the steering column under the fuse box. (Tr.28.)
 {¶ 23} Because the police were in place for the specific purpose of interdicting this drug transaction, which was set up by their own informant at their behest, the officers reasonable suspicion was aroused when Terry's vehicle, matching the description Mankins provided, arrived as predicted. Although they did not see or hear the transaction, a reasonable and cautious officer on the scene would have had probable cause to arrest Mr. Terry once the prearranged brake light tapping from Mankins' car signaled the officers that the transaction was complete.
 {¶ 24} Based upon Mankins' conversations with police, they knew that a man driving an automobile matching the description Mankins had given would pull into Mankins' driveway to complete a drug transaction. *Page 8 
 {¶ 25} The police also knew that Mankins had arranged to purchase $500 worth of crack cocaine from a man Mankins referred to as "Jay," based upon their prior relationship as drug buyer and drug seller, respectively (Tr. 47.)
 {¶ 26} Mankins was able to describe Mr. Terry's vehicle to Detective Mitchell during their prior meeting because, as he testified, he had purchased drugs in this manner from Mr. Terry "plenty" of times, "more than enough." (Tr. 45.) According to the record, members of the Strike Force saw Mankins tap his brake lights to indicate the transaction was consummated.
 {¶ 27} Once under arrest, a search of Mr. Terry's person and his vehicle revealed the buy money, additional contraband, and a large quantity of crack cocaine, found in the exact location Mankins had predicted it would be: under the steering column by the fuse box.
 {¶ 28} Based upon the circumstances revealed in the record, probable cause existed to place Mr. Terry under arrest. Since Mr. Terry was validly placed under arrest, Ohio law is clear that the officers had the right to conduct a search of his person incident to arrest and conduct an inventory search of his automobile. State v. Murrell,94 Ohio St.3d 489, 2002-Ohio-1483, citing New York v. Belton (1981), 453 U.S. 454,460. Any evidence procured as a result of that search, since it was prompted by a valid arrest, was obtained constitutionally. Id.
 {¶ 29} Appellant's assignment of error is overruled.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. *Page 9 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. McMONAGLE, J., and LARRY A. JONES, J., CONCUR. *Page 1